# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| EDWARD DEANE, GEORGE WIHBEY AND JASON CUNNINGHAM IN HIS CAPACITY AS ATTORNEY-IN-FACT FOR WILLIAM CUNNINGHAM, for themselves and in the right and for the benefit of New Media Investors II-B, LLC, and New Media II-B, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT A. MAGINN, JR.,<br><br>Defendant,<br><br>and<br><br>NEW MEDIA INVESTORS II-C, LLC,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 2017-0346-LWW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Date Submitted:  December 16, 2021
Date Decided: March 2, 2022

David H. Holloway, SHLANSKY LAW GROUP, LLP, Wilmington, Delaware; Colin R. Hagan and David J. Shlansky, SHLANSKY LAW GROUP, LLP, Chelsea, Massachusetts; *Counsel for Plaintiffs Edward Deane, George Wihbey, and William Cunningham*

Jody C. Barillare and Amy M. Dudash, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Michael D. Blanchard, MORGAN, LEWIS & BOCKIUS, Boston, Massachusetts; *Counsel for Defendant Robert A. Maginn, Jr. and Nominal Defendant New Media Investors II-C, LLC*

**WILL, Vice Chancellor**

This action arises from a long-running dispute between members of New Media Investors II-B, LLC—a vehicle for investing in Jenzabar, Inc.—and its manager Robert Maginn, Jenzabar's former Chief Executive Officer. Most of the relevant facts took place nearly a decade ago. Certain of the events at issue date back even further, occurring at a time when George W. Bush was in his first term as President, the iPod mini was the hottest gadget, and this judge was in college.

The procedural history of this litigation also spans many years, having been presided over by three different members of the Court of Chancery—two of whom have since retired. A review of the docket reveals that the action has proceeded slowly and in fits and starts. A books and records action was filed in July 2014 but lingered for seventeen months before resolution. A plenary suit was filed in Delaware Superior Court nearly a year after the books and records action concluded and transferred to the Court of Chancery five months later. After a motion for summary judgment on the plaintiffs' original complaint was denied in November 2017, the litigation sat largely idle for over two years.

The court entered a scheduling order in August 2020 to ensure that the matter moved forward and emphasized that no further extensions would be given. But in May 2021, the plaintiffs said that they had learned of new information in discovery that required amendments to their pleading. An amended complaint was filed in

1

June 2021—almost seven years after the first books and records action was brought—with extensive changes.

The scope of the plaintiffs' claims increased dramatically. The plaintiffs' original claim was based on a single theory: that Maginn breached his fiduciary duties by allowing New Media II-B's in-the-money warrants for common shares of Jenzabar stock to expire. Now, the plaintiffs also contend that Maginn breached his fiduciary duties by usurping an opportunity presented by another issuance of warrants in 2013 and orchestrating a series of transactions from 2000 to 2011 by which he caused certain of New Media II-B's investments to vanish. The plaintiffs also seek a declaration that they are the sole remaining members of New Media II-B and validly replaced Maginn as the LLC's managers in 2020.

Maginn moved to dismiss the amended complaint, but I converted that motion into one for summary judgment, which is resolved by this decision. Maginn contends that judgment should be granted in his favor because the plaintiffs' claims are time-barred and because necessary and indispensable parties are absent. I agree that two of the plaintiffs' claims present a quintessential laches problem and grant the motion, in part, on that basis. I otherwise deny the motion for summary judgment, finding that genuine issues of fact remain for trial. I likewise deny the plaintiffs' motion to appoint a receiver.

2

## I. BACKGROUND

The following summary is drawn from the plaintiffs' First Amended Complaint (the "Amended Complaint") for uncontested background facts and from the factual record.[1]

### A. The New Media II-B Warrants

Plaintiffs Edward Deane, George Wihbey, and William Cunningham are members of New Media Investors II-B, LLC, a Delaware limited liability company.[2] New Media II-B was formed in 2000 to facilitate investments into Jenzabar, Inc., a private Delaware corporation that develops software for the education sector.[3] Defendant Robert Maginn founded Jenzabar and served as its Chief Executive Officer from its inception to 2019.[4] He was also New Media II-B's managing member from 2000 to at least 2013.[5]

In 2004, following litigation between Jenzabar and an investor, Jenzabar recapitalized to satisfy certain repayment obligations.[6] As part of that restructuring, New Media II-B members exchanged Jenzabar Series A Convertible Preferred Stock

---

[1] Dkt. 99.

[2] First Am. Compl. ("Am. Compl.") ¶ 1 (Dkt. 99).

[3] *Id.* ¶¶ 2-3.

[4] *Id.* ¶ 3.

[5] *See id.* ¶¶ 3, 13.

[6] *See id.* ¶¶ 23-31.

for Junior Preferred Stock and warrants granting New Media II-B the right to purchase up to 1,129,275 shares of Jenzabar Common Stock (the "II-B Warrants").[7] The II-B Warrants had an exercise price of $0.89.[8] They also had a cashless exercise option. New Media II-B could exercise the warrants by "paying" with foregone shares in lieu of cash, alleviating financing concerns.[9]

After an extension, the II-B Warrants had an expiration date of October 21, 2011.[10] Before the II-B Warrants' expiration, per their terms, Jenzabar's board of directors empowered a special committee (the "Committee") to determine the value of Jenzabar's common stock.[11] The Committee, consisting of non-parties Daniel Quinn Mills and Joseph San Miguel, engaged Bulger Capital Partners to review a 2010 KPMG valuation to determine the stock's value.[12] The Committee found the stock to be worth "significantly less than $0.89 per share."[13] Because the Committee determined the value of Jenzabar common stock to be less than the II-B Warrants' exercise price, the warrants expired unexercised.[14]

---

[7] *Id.* ¶ 33.

[8] *Id.*

[9] *Id.* ¶ 65.

[10] *See* Def.'s Mot. for Summary J. ("Def.'s Mot.") Ex. 4 (Dkt. 148).

[11] *See* Def.'s Mot. Ex. 3, Ex. 4.

[12] Am. Compl. ¶ 135.

[13] Opening Br. Ex. 4.

[14] *See id.*; Am. Compl. ¶ 85.

4

Around the time of the II-B Warrants' expiration in 2011, Jason Cunningham ("Cunningham")—attorney-in-fact for his father, plaintiff William Cunningham— came to believe that the Committee's valuation was "faulty" and that the II-B Warrants would expire as "worthless."[15] Cunningham also had a "heated" conversation with Maginn, accusing him of "using an artificially low valuation to wipe out the warrants."[16] He shared that opinion with Deane and Wihbey, telling them that "the warrants weren't worth less than 89 cents" and that there were "some serious red flags."[17] By September 2012, Deane was also concerned that the II-B Warrants had "no value."[18]

## B. New Media II-C Warrants and New Media II-B's "Conclusion"

After the II-B Warrants expired, on June 21, 2012, the Committee issued new warrants (the "II-C Warrants") to Jenzabar investment vehicle New Media II-C LLC.[19] These warrants had "an exercise price per share equal to the fair market value of one share of such Common Stock on June 30, 2012, as determined by KPMG or another independent valuation expert."[20]

---

[15] Def.'s Mot. Ex. 5 at 72-74.

[16] *Id.* at 74-75.

[17] *Id.* at 76-77.

[18] *See* Def.'s Mot. Ex. 7 at 33-34.

[19] Def.'s Mot. Ex. 4A.

[20] *Id.*

On December 19, 2013, Maginn wrote to inform the New Media II-B members of the "conclusion" of their New Media investment.[21] He enclosed what he described as each member's "final check" for their interest in New Media II-B and invited members to "invest in another Jenzabar opportunity."[22] That opportunity was New Media II-C. A "Payment Acknowledgement and Release" form was included with Maginn's correspondence.[23] By depositing their final checks, members agreed to broadly release any claims against New Media II-B, Jenzabar, and their affiliates.[24]

### C.   Books and Records Action

Deane served a books and records demand on New Media II-B on July 23, 2014 for stated purposes including valuing his interest in New Media II-B and investigating whether Maginn had committed wrongdoing in connection with "self-interested transactions entered into on behalf of New Media II-B."[25] On July 31, 2014, Deane filed a books and records action against New Media II-B.[26] Wihbey

---

[21] Def.'s Mot. Ex. 8.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] Pls.' Answering Br. in Opp'n to Mot. for Summary J. ("Pls.' Opp'n") Ex. P (Dkt. 167).

[26] C.A. No. 9984-VCN, Dkt. 1.

6

and William Cunningham each filed similar books and records actions in March 2015.[27]

The three actions were consolidated on May 14, 2015.[28] After trial on October 22, 2015, Vice Chancellor Noble issued a decision on December 23, 2015 resolving the action.[29] The court found that the plaintiffs had not demonstrated a proper purpose to investigate wrongdoing because they had failed to set forth a credible basis from which the court could infer mismanagement.[30] The valuation purpose, however, was found to be proper and the court ordered the production of documents from New Media II-B that were necessary for the plaintiffs to determine the value of their investment.[31] The defendants produced those documents on February 17, 2016.[32]

### D.    This Litigation

The plaintiffs first filed this litigation in Delaware Superior Court on December 6, 2016.[33] Because they advanced a claim for breach of fiduciary duty

---

[27] C.A. No. 10763-ML, Dkt. 1; C.A. No. 10795-ML, Dkt. 1.

[28] C.A. No. 9984-VCN, Dkt. 14.

[29] *See In re New Media Books & Recs. Action*, C.A. No. 9984-VCN (Del. Ch. Dec. 23, 2015).

[30] *Id.* at *1.

[31] *Id.* at *2.

[32] Pls.' Opp'n Ex. R.

[33] C.A. No. N16C-12-037-EMD, Dkt. 1.

7

over which that court lacked subject matter jurisdiction, the case was transferred to the Court of Chancery.[34] On May 5, 2017, the plaintiffs' Verified Complaint (the "Complaint') was filed in this court.[35] The Complaint included a direct and derivative claim for breach of fiduciary duty against Maginn focused on the allegation that he had engaged in self-dealing by allowing the II-B Warrants to expire and "conceal[ing]" the expiration from New Media II-B's members.[36]

On June 21, 2017, Maginn moved for summary judgment.[37] Chancellor Bouchard denied that motion in a bench ruling on November 28, 2017.[38] Some limited discovery took place through the spring of 2018.[39] Then the litigation stalled for over two years.

On June 12, 2020, Chancellor Bouchard sent the parties a status request letter, noting that the docket reflected a lack of substantive activity since March 2018.[40] He asked for the parties to provide an update and explain why the case "should not be dismissed."[41] In response, the defendant confirmed that the case had been

---

[34] C.A. No. N16C-12-037-EMD, Dkt. 12.

[35] Dkt. 1.

[36] *See* Verified Compl. ¶¶ 82-88 (Dkt. 1).

[37] Dkt. 6.

[38] Dkt. 22.

[39] *See* Dkt. 25.

[40] Dkt. 35.

[41] *Id.*

"effectively dormant" since August 2018 when the limited discovery the plaintiffs had sought was completed.[42] The plaintiffs also acknowledged that the case had not "progressed with . . . consistent speed" but asked nonetheless that it be adjudicated on the merits.[43]

Chancellor Bouchard held a status conference on August 11, 2020. He noted that the case had "moved beyond a snail's pace and really should not be in the shape it's in."[44] He ordered that the parties agree to a schedule "that there [were] going to be no more extensions from, that people [we]re going to have to live with."[45] A scheduling order was entered on August 19, 2020. It provided for an April 2, 2021 fact discovery deadline and a September 2021 trial.[46] Chancellor Bouchard admonished the plaintiffs' counsel to "move with greater alacrity to complete discovery without further delay."[47]

On May 3, 2021—four months before trial and after deposing Maginn—the plaintiffs filed a letter requesting leave to amend and supplement their Complaint.[48] They asserted that they had identified additional breach of fiduciary duty theories

---

[42] Dkt. 36.

[43] Dkt. 37.

[44] Dkt. 76 at 17.

[45] *Id.*

[46] Dkt. 45.

[47] Dkt. 79.

[48] Dkt. 86; *see* Pls.' Opp'n Ex. J.

during discovery, including a breach related to Jenzabar securities that were unaccounted for "in the period of 2000 to 2010."[49] They represented that Maginn would face no prejudice from an amendment because discovery was largely complete.[50] I permitted the amendment but encouraged the plaintiffs to be "reasonable" and "focused" in their amendment and consider "the timeliness of certain allegations."[51]

On June 15, 2021, the plaintiffs' Amended Complaint was filed.[52] The Amended Complaint is 70 pages long, compared to the original Complaint's 25 pages. It continued to allege that Maginn breached his fiduciary duties in connection with the expiration of the II-B Warrants. But it also challenged Maginn's non-disclosure of certain information in 2013 related to securities that "disappear[ed]" at "sometime between March 2000 and the present."[53] In addition, the plaintiffs allege that they—purportedly as the only members of New Media II-B by virtue of never having deposited their final checks—elected themselves managers of the entity following an attempt by Maginn to dissolve New Media II-B in December 2020.[54]

---

[49] Dkt. 86 at 3.

[50] *Id.* at 4.

[51] Dkt. 100 at 16.

[52] Dkt. 99.

[53] *See* Am. Compl. ¶ 8.

[54] *Id.* ¶¶ 163-83.

10

Now nearly triple the length of the Complaint, the Amended Complaint also increased the number of claims. Count I of the Amended Complaint is for breach of fiduciary duty against Maginn. Three distinct theories are advanced within that count. One alleges that Maginn caused the II-B Warrants to go unexercised despite being "in the money" (the "Warrant Claim"). Another alleges that Maginn caused various securities held by New Media II-B to "disappear" or be "lost" (the "Disappearing Securities Claims"). The third alleges that Maginn "usurp[ed]" an investment opportunity—the II-C Warrants—belonging to New Media II-B (the "II-C Claim").[55]

Count II seeks declaratory relief stating that the plaintiffs have been elected as managers of New Media II-B, that Maginn is no longer a member of New Media II-B, and that Maginn is no longer a manager of New Media II-B.[56]

Count III is an unjust enrichment claim seeking "an order directing Mr. Maginn to turn the shares received on account of New Media II-B over to New Media II-B, provide monetary restitution, or other relief."[57] It is pleaded "in the

---

[55] *Id.* ¶¶ 124-67. Paragraph 126(e) of the Amended Complaint is also included in the II-C Claim.

[56] *Id.* ¶¶ 168-83.

[57] *Id.* ¶ 195.

11

alternative, to the extent it is not entailed or cognizable in [the plaintiffs'] theories for breach of fiduciary duty."[58]

On July 19, 2021, Maginn moved to dismiss the Amended Complaint.[59] Because the briefing relied extensively on extraneous materials, I converted the motion to dismiss into a Rule 56 motion.[60] Briefing on Maginn's motion for summary judgment was completed on December 16, 2021 with the plaintiffs' sur-reply.[61] Maginn moved for summary judgment on two grounds: under Court of Chancery Rule 19 for failure to join necessary parties as to the plaintiffs' request for a declaratory judgment; and on the grounds of laches as to the plaintiffs' breach of fiduciary duty and unjust enrichment claims. [62] Oral argument on the motion for summary judgment was presented on December 16, 2021.[63]

---

[58] *Id.* ¶ 185. According to the plaintiffs, New Media II-C is listed as a nominal defendant in the Amended Complaint because of the relief sought in Count III, which would require New Media II-C to relinquish the II-C Warrants. The parties also spent a portion of their briefing discussing the plaintiffs' derivative claim, which appear to plead in Count III in the event that they are not adjudicated managers of New Media II-B under Count II. *Id.* at 65 n.1. Because this argument depends on the outcome of Count II which survives summary judgment, those arguments are not addressed in this decision.

[59] Dkt. 108.

[60] Dkt. 135.

[61] Dkts. 148, 167, 170, 177.

[62] Def.'s Mot. at 3-6.

[63] Dkt. 178.

That same day, the plaintiffs filed a motion seeking the appointment of a receiver for New Media II-B.[64] The plaintiffs assert that a receiver could assess whether there are other members of New Media II-B who must be joined as necessary parties. Briefing on that motion was completed on January 14, 2022 and considered submitted for decision at that time.[65]

The case is scheduled for trial beginning on March 28, 2022.

## II. LEGAL ANALYSIS

Summary judgment is granted under Court of Chancery Rule 56 only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[66] The defendant, as the moving party, has the initial "burden of demonstrating the absence of a material factual dispute."[67] The court must view evidence "in the light most favorable to the non-moving party."[68] At this stage in the case, the court will not weigh evidence.[69]

---

[64] Dkt. 174.

[65] Dkt. 218.

[66] Ct. Ch. R. 56(c).

[67] *Levy v. HLI Operating Co.*, 924 A.2d 210, 219 (Del. Ch. 2007).

[68] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).

[69] *See Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002).

The plaintiffs must "adduce some evidence of a dispute of material fact" to avoid summary judgment if the defendant meets his burden.[70] Summary judgment is "inappropriate" if a rational trier of fact could find any determinative fact in favor of the non-moving party.[71] But the "'existence of a scintilla of evidence in support of the [non-moving party's] position' is not sufficient."[72]

Those standards guide my analysis of the two central arguments raised by Maginn. I first address his argument that the Amended Complaint is untimely. I conclude that the Warrant Claim and Disappearing Securities Claims are time-barred. I find that issues of material fact remain as to the timeliness of the II-C Claim and, by extension, Count III. I then consider his Rule 19 argument and decline to grant summary judgment on that basis because a genuine dispute remains with regard to whether the plaintiffs are the only members of New Media II-B. Finally, I deny the plaintiffs' request to appoint a receiver.

---

[70] *Metcap Secs. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at *3 (Del. Ch. Feb. 27, 2009).

[71] *Cerberus*, 794 A.2d at 1150; *see also Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969) ("When an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate.").

[72] *Haft v. Haft*, 671 A.2d 413, 419 (Del. Ch. 1995) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986)).

## A. Whether Counts I and III Are Untimely

Maginn contends that he is entitled to judgment as a matter of law on Counts I and III "under (1) the analogous three-year statute of limitations and (2) a traditional application of the factors underlying laches."[73] Statutes of limitations apply by analogy to equitable claims seeking legal relief.[74] Great weight is given to the analogous statutory period when considering claims that fall under the court's exclusive equitable jurisdiction and the "analogous limitations period should operate as a strong presumption of laches for cases in this Court's concurrent jurisdiction."[75] In both instances, applying the statute of limitations by analogy "generally will obviate the need for a traditional laches inquiry."[76] And when an equitable claim seeks legal relief, the presumption of laches is rebuttable "either by a recognized tolling doctrine or by the presence of extraordinary circumstances."[77]

### 1. The Analogous Statute of Limitations Bars the Warrant Claim

The Warrant Claim centers around the plaintiffs' allegations that the defendants breached their fiduciary duties by allowing the II-B Warrants to expire

---

[73] Def.'s Mot. at 31.

[74] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 981 (Del. Ch. 2016).

[75] *Id.* at 982.

[76] *Id.* at 982-83.

[77] *Id.* at 983.

despite being "in the money."[78]  "Absent tolling, the limitations period 'begins to run from the time of the [allegedly] wrongful act, without regard for whether the plaintiff became aware of the wrongdoing at that time.'"[79]  Here, the alleged wrongful act transpired on October 2, 2011, when Maginn allowed the expiration to occur.  Count I brings equitable claims seeking equitable and legal relief in the form an accounting and damages.[80]  Accordingly, a three-year statute of limitations applies by analogy, creating a presumption of untimeliness if the plaintiffs failed to file their fiduciary duty claims by October 2014.[81]

The plaintiffs waited until December 6, 2016 to plead the Warrant Claim, when they filed a complaint in Superior Court.[82]  More than five years separate the purported harm from that filing.  Thus, absent tolling, summary judgment must be

---

[78] *See* Am. Compl. ¶ 124.

[79] *Firemen's Ret. Sys. St. Louis v. Sorenson*, 2021 WL 4593777, at *8 (Del. Ch. Oct. 5, 2021) (quoting *Kraft*, 145 A.3d at 989); *see Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) ("This Court has repeatedly held that a cause of action 'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action."); *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 733 (Del. 2020) ("Outside these [tolling] exceptions, the statute of limitations continues to run even if the claimant is unaware of the facts supporting a cause of action.").

[80] Am. Compl. ¶¶ 124-26.

[81] *See Wal-Mart*, 860 A.2d at 319 (applying a three-year statute of limitations by analogy to fiduciary duty and unjust enrichment claims under 10 *Del. C.* § 8106).

[82] C.A. N16C-12-037-EMD, Dkt. 1 ¶ 73 .

granted with respect to the Warrant Claim because it was brought beyond the analogous statute of limitations. [83]

The plaintiffs make two arguments aimed at preserving their claims. First, they argue that the Warrant Claim is not time-barred because the statute of limitations was tolled by their books and records action. Second, they argue that three traditional tolling doctrines apply. Neither argument succeeds.

a. Tolling for the Books and Records Litigation

The plaintiffs contend that their Section 18-305 action—filed on July 31, 2014[84]—tolled the statute of limitations.[85] In their view, continuous tolling applies from the date of that filing, through the nine months after they were given documents in February 2016, and ends with the filing of their December 2016 Complaint. Maginn disagrees, arguing that tolling should not apply for the full duration of the books and records action due to the plaintiffs' relative inaction from July 2014 to May 2015. He also asserts that tolling is not available for the nine months between the production of the books and records and the filing of the Complaint.

---

[83] The plaintiffs have not argued that extraordinary circumstances apply. "Issues not briefed are deemed waived." *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999). In any event, the court does not believe that any extraordinary circumstances that would provide for the length of tolling necessary are present.

[84] C.A. No. 9984-VCN, Dkt. 1. More accurately, Deane's books and records action was filed on July 31, 2014, and Cunningham and Wihbey's were filed in March 2015. The actions were consolidated on May 14, 2015. *See* notes 26-28 and accompanying text.

[85] *See* Pls.' Opp'n 48-52.

"Delaware courts have interpreted Section 18-305 by looking to 'cases interpreting similar Delaware statutes concerning corporations and partnerships.'"[86] When considering tolling in the context of 8 *Del. C.* § 220, this court has observed that "there is no hard and fast rule tolling the running of the statute of limitations during the pendency of books and records litigation."[87] Tolling has been found to begin when a books and records action is filed and to extend past the production of the requested documents for some "reasonable" time.[88] Generally, a books and records action may toll the statute of limitations where it presents "strong evidence that [a] plaintiff was aggressively asserting its claims."[89]

In *Sutherland v. Sutherland*, the court tolled the statute of limitations during the less than 120 days between its final decision in a books and records action and the filing of a plenary complaint.[90] The court concluded that time period was "reasonable" because it allowed for documents to be produced and the plaintiff to prepare a complaint after reviewing them.[91] Here, considerably more than double

---

[86] *Sanders v. Ohmite Hldgs., LLC*, 17 A.3d 1186, 1193 (Del. Ch. 2011) (quoting *Somerville S Trust v. USV P'rs, LLC*, 2002 WL 1832830, at *5 n.4 (Del. Ch. Aug. 2, 2002)).

[87] *Sutherland v. Sutherland*, 2009 WL 1177047, at *1 (Del. Ch. Apr. 22, 2009).

[88] *Sutherland v. Sutherland*, 2009 WL 857468, at *5 (Del. Ch. Mar. 23, 2009); *see Sorenson*, 2021 WL 4593777, at *10-11.

[89] *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 714 A.2d 96, 105 (Del. Ch. 1998).

[90] 2009 WL 857468, at *5.

[91] *Id.*

that time (293 days) separates the last substantive docket item in the books and records action and the plaintiffs' filing of their complaint in Superior Court. It would not be reasonable to toll the entirety of that period—particularly since only 123 pages of documents responsive to a valuation purpose were produced, which the plaintiffs acknowledge "shed no light on the Jenzabar warrants or the reason they were permitted by Mr. Maginn to expire."[92]

That tolling is not available for the full time period requested is further supported by the procedural history of the books and records litigation. Despite it being a summary proceeding, the record indicates that the plaintiffs pursued their claims with little zeal. They waited over two and a half years from the II-B Warrants' expiration to file their Section 18-305 complaint. After the defendants filed their answer in that action on September 10, 2014, the case lay dormant until Deane's counsel sent a letter to the court indicating a change of address nearly eight months later on May 1, 2015.[93]

The plaintiffs argue that their interest in litigating the matter is evidenced by the motion to expedite filed with Deane's Section 18-305 complaint.[94] But Deane

---

[92] Am. Compl. ¶ 83.

[93] *See* C.A. 9984-VCN, Dkts. 10, 11. Wihbey and Cunningham's books and records actions do not change the calculus. Because those cases were filed in March 2015, the tolling calculations are similar to those associated with Deane's July 2014 filing, given the dormancy that followed the September 2014 answer.

[94] Pls.' Opp'n 33.

was required to file a motion to expedite by our court's rules, never sought a hearing on the motion to expedite, and did not at any point act in a way that indicated a desire for a prompt trial.[95] The litigation lasted a year and five months. It then took the plaintiffs over nine months from the defendant's production to file a plenary complaint.

In my view, generous tolling would begin upon the filing of the Section 18-305 action on July 31, 2014, pause from October 10, 2014 (one month after the answer was filed) to May 13, 2015 (the day of the next substantive filing in the case), and end 30 days after the defendant's production on February 17, 2016. That time frame would have given the plaintiffs adequate time after production to file a complaint. This tolling would sum up to 351 days. Given the over five years separating the expiration of the II-B Warrants from the filing of plaintiffs' Complaint, less than a year of tolling cannot alone prevent the Warrant Claim from being time barred.

### b. Traditional Tolling Doctrines

The plaintiffs also cite to three tolling doctrines that they believe preserve their Warrant Claim: inherently unknowable injury, fraudulent concealment, and equitable tolling. In addition to the approximately one year of tolling available for the Section 18-305 action, the plaintiffs need another year of tolling to bring the

---

[95] Ct. Ch. R. 3(bb).

Warrant Claim within the analogous three-year statute of limitations. But there is no basis for a year of tolling under any combination of these tolling doctrines because the record demonstrates that the plaintiffs were on inquiry notice of their Warrant Claim by July 2012 at the latest.

The limitations period can only be tolled "*only until* the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury."[96] Neither "*actual* discovery of the reason for the injury" nor an "awareness of all aspects of the alleged wrongful conduct" are necessary for inquiry notice.[97] Notice exists "where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong."[98]

Cunningham's testimony indicates that he was on inquiry notice of the Warrant Claim around the time of the II-B Warrants' expiration in 2011. In his deposition, Cunningham testified that he reached out to Jamison Barr—Jenzabar's General Counsel—because "there were issues with the warrants" near the time the

---

[96] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998).

[97] *Id.* at *7.

[98] *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007) (adding that "[e]ven where a defendant uses every fraudulent device at its disposal to mislead a victim or obfuscate the truth, no sanctuary from the statute will be offered to the dilatory plaintiff who was not or should not have been fooled").

warrants were set to expire.[99] The "issues" were that the II-B Warrants "were going to expire worthless based on what [Cunningham] viewed [as] a faulty valuation."[100]

Even if Cunningham was mistaken in recalling that time period, there is no genuine issue of material fact that he was on inquiry notice by July 2012. An email from Cunningham to Maginn on July 23, 2012 makes clear that Cunningham had "spoken to [Barr] numerous times about the expiration of [the plaintiffs'] warrants" on behalf of a "consortium of individual investors" before that date.[101] The plaintiffs cite to evidence they say demonstrates otherwise. For example, they point to Cunningham's testimony about Barr not returning Deane's calls in September 2012, which the plaintiffs admit raised their suspicions about the II-B Warrants.[102] And they point to Cunningham's testimony that he confronted Maginn after an article about Jenzabar was published on August 19, 2014.[103] That evidence is both unpersuasive and immaterial—it does not create a genuine issue of material fact. An argument that events transpired after July 2012 that would have put the plaintiffs on inquiry notice does not mean that earlier events providing for inquiry notice did not occur.

---

[99] Def.'s Mot. Ex. 5 at 72-73.

[100] *Id.* at 72.

[101] Def.'s Reply Br. in Supp. of Summary J. ("Def.'s Reply") Ex. 16 (Dkt. 170).

[102] Pls.' Opp'n 30-31; *see* Def.'s Mot. Ex. 5 at 75-76.

[103] Pls.' Opp'n 29-30; *see* Def.'s Mot. Ex. 5 at 74-75; Def.'s Mot. Ex. V.

Moreover, the plaintiffs acknowledge that "the earliest that any concern about the II-B warrant expiring valueless based on a faulty valuation [existed] was in August-September 2012."[104] Deane also testified that around September 2012, he became concerned that "somebody's concealing something from [him]" with regard to the value of the warrants leading him to suspect "there's no value there."[105] Even accepting the plaintiffs' concession that they were on inquiry notice by August or September 2012 and assuming that a tolling doctrine applied before then, only eleven months of tolling would be available.

*  *  *

The Warrant Claim is time-barred. The most generous interpretation of the record in the plaintiffs' favor falls short of providing the amount of tolling necessary to rebut a presumption of laches by at least several months.[106] Summary judgment is therefore granted in Maginn's favor with respect to the Warrant Claim.[107]

---

[104] Pls.' Opp'n 32.

[105] Def.'s Mot. Ex. 7 at 33-34.

[106] *See TrustCo Bank v. Mathews*, 2015 WL 295373, at *13 (Del. Ch. Jan. 22, 2015) (finding summary judgment appropriate where plaintiffs "offered no explanation as to why they should not be bound by their own admission[s]" and "[m]ere *ipse dixit* in their briefing . . . insufficient to create a genuine dispute of material fact").

[107] For clarity, summary judgment is also granted as to the two subsections labeled (f) in Paragraph 126 of the Complaint. *See* Am. Compl. ¶ 126(f)-(f). It is not apparent whether the plaintiffs intended those allegations to form a separate claim. They concern Maginn's alleged failure to maintain, concealment of, and destruction of New Media II-B records concerning the II-B Warrants. In my view, to the extent they form a claim separate from the Warrant Claim, they are also time-barred.

### 2. Laches Bars the Disappearing Securities Claims

The plaintiffs also assert that Maginn breached his fiduciary duties with regard to securities held by New Media II-B that "disappeared" or became "lost."[108] To the extent that the Disappearing Securities Claims are even well-pleaded,[109] they fall years outside of the analogous three-year statute of limitation. And even if the plaintiffs could demonstrate that the Disappearing Securities Claims—first advanced in the Amended Complaint—related back to the claim in their original Complaint, they are barred by laches.

The record indicates that plaintiffs were put on inquiry notice of the Disappearing Securities Claims by December 19, 2013 when they received a letter from Maginn announcing "the conclusion of [their] New Media Investment via . . . New Media Investor II-B LLC."[110] The apparent termination of the plaintiffs' investment in New Media II-B marked the final time at which any securities held by the entity could have "disappeared." And any losses that the plaintiffs may have

---

[108] *See id.* ¶¶ 124, 126.

[109] The court has struggled to parse out both the nature of the claims and their factual foundations. For instance, the Amended Complaint alleges that Maginn breached his fiduciary duties by "dispos[ing] of an unspecified class of 'Jenzabar Shares' obtained at a cost of $1,070,230, for a loss of $302,580 on October 2, 2011, without any mention to New Media's Members other than on a tax return dated 2011." *Id.* ¶ 124. This assertion is repeated once in the fact section, and otherwise completely unsupported. *See id.* ¶ 97. Had the court not converted the defendant's motion to dismiss into a motion for summary judgment, it is likely that this claim would have been dismissed for failure to state a claim under Rule 12(b)(6).

[110] Def.'s Mot. Ex. 8.

24

borne as a result of Maginn's actions would have been discoverable at that point with the exercise of reasonable diligence.[111] The plaintiffs' briefing acknowledges that they learned that "only 83.3% of their interests had ultimately been redeemed" when "they received their supposed 'final checks.'"[112]

Unlike the Warrant Claim, the Disappearing Securities Claims were not pleaded until June 15, 2021, when the Amended Complaint was filed. That means that over seven years separate when plaintiffs had inquiry notice of the facts giving rise to the Disappearing Securities Claims and their filing. The plaintiffs argue that the claims are nonetheless timely because they relate back to the Complaint, which was filed just shy of three years after the plaintiffs were put on notice.[113] Regardless, the Disappearing Securities Claims are barred by laches.

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his right and acquiesced for a great length of time."[114] "[C]onsiderations of conscience, good faith, and reasonable diligence" also factor into the laches analysis.[115] Given these considerations, "a party seeking equitable relief may need

---

[111] *See Dean Witter*, 1998 WL 442456, at *5.

[112] Pls.' Opp'n 41.

[113] Pls.'Opp'n 34-38.

[114] *Smith v. Clay* (1767) 27 Eng. Rep. 743, 744.

[115] *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009).

25

to file with greater alacrity than is required by the analogous statute of limitations to preserve its entitlement to relief."[116] The court considers "the totality of the circumstances" when conducting a laches analysis.[117]

The lengthy procedural history indicates that these core equitable principles are absent here. For the court to find laches, it "generally requires the presence of three factors: the claimant's knowledge of the claim, unreasonable delay in bringing the claim, and resulting prejudice to the defendant."[118] The defendants have shown that there is no genuine issue of material fact with regard to any element. After gaining knowledge of their claims, the plaintiffs brought them after an unreasonable delay, causing Maginn prejudice.

In terms of knowledge, the plaintiffs learned of the purported termination of their New Media II-B investment in December 2013. Setting aside whether that put them on inquiry notice of the full scope of their Disappearing Securities Claims, there is no genuine issue of material fact that the plaintiffs were on actual notice by

---

[116] *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013).

[117] *Hudak v. Procek*, 806 A.2d, 140, 153 (Del. 2002).

[118] *WisdomTree*, 145 A.3d at 974; *see Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 7 (Del. 2009) ("Laches is an unreasonable delay by a party, without any specific reference to duration, in the enforcement of a right, and resulting in prejudice to the adverse party.").

August 2018 when they received financial documents that form the basis of the claims.[119] The Amended Complaint was filed almost three years later.

That delay was unreasonable. This litigation had been pending for well over a year and a half when the plaintiffs acquired actual notice. In August 2018, the litigation was inactive. Some limited discovery happened in the summer of 2018. And then the docket reveals only a change of counsel until the court issued a status request letter in June 2020, asking for a reason why the litigation should not be dismissed. Rather than advance the Disappearing Securities Claims during this time, the plaintiffs waited until three and a half months before trial to request leave to amend their pleading to add them.

Finally, the plaintiffs' delay has caused obvious prejudice to Maginn. "[T]he degree of prejudice required to invoke laches may reflect the length of the delay . . . . A particularly long delay in commencing an action and a relatively small amount of prejudice may support laches."[120] The amount of prejudice required to find laches for the Disappearing Securities Claims here need not be substantial. But it is. The Disappearing Securities Claims refer to transactions from as far back as 2000 and

---

[119] *See* Def.'s Mot. Ex. 13. The plaintiffs claim that these documents could not have put them on inquiry notice yet rely on it exclusively in their sur-reply when explaining their Disappearing Securities Claims. *See* Pls.' Sur-Reply in Opp'n to Mot. for Summary J. 8-10 (Dkt. 77).

[120] *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *9 (Del. Ch. April 25, 2019) (quoting Howard W. Brill, *The Maxims of Equity*, 1993 Ark. L. Notes 29, 38 (1993)).

are based, in large part, on financial statements from 2009 and 2010. As Maginn persuasively argues, that passage of time makes it challenging to mount a defense. It is difficult to imagine that the defendant has access to documents from 2004 to 2013 that might be necessary to his case and that he has not since taken any action in reliance of the validity of these transactions. The record further supports a finding of prejudice—certain deponents could not respond to numerous relevant questions because of fading memories.[121]

Had the plaintiffs acted with greater alacrity, these problems could have been avoided. The plaintiffs did not bring the Disappearing Securities Claims after New Media II-B distributed final checks to its members in 2013. Nor did they do so in the aftermath of the defendant's production of financial documents in 2018. They brought the Disappearing Securities Claims years later in 2021. Accordingly, the Disappearing Securities Claims are barred by laches. Summary judgment on those claims is granted.

---

[121] *See, e.g.*, Pls.' Opp'n Ex. A at 19-21 (Wihbey testifying that he fails to recall when he spoke to Barr in 2013, when the "final checks" were distributed, when or how he connected with counsel, and who decided to bring a books and records action); Def.'s Mot. Ex. 9 at 8-10 (Deane testifying that he fails to recall if he received any paperwork when he invested into New Media II-B and who told him not to cash his "final check"); *see also Eluv Hldgs. (BVI) Ltd. Dotomi, LLC*, 2013 WL 1200273, at *12 (Del. Ch. Mar. 26, 2013) (holding that the defendant "would suffer at least some prejudice" where "memories have faded regarding the circumstances surrounding [the basis of the claim]" and the defendant had paid out disputed funds and undergone "several significant corporate changes").

### 3. Genuine Issues of Material Fact Remain as to the Timeliness of the II-C Claim and Unjust Enrichment Claim

The defendants assert that they are also entitled to judgment in their favor on the II-C Claim because it is untimely. They argue that the plaintiffs have been on inquiry notice of the claim since receiving their invitation to invest in a new Jenzabar opportunity in December 2013.[122] The II-C Claim was not pleaded until June 2021. Absent tolling, the II-C Claim would be well outside the three-year statute of limitations.

There are, however, material questions of fact remaining as to whether the plaintiffs were on inquiry notice of the II-C Claim in 2013. They learned of an invitation to invest in another Jenzabar opportunity through Maginn's December 2013 letter. And, though it was not identified as such in the letter, that opportunity was New Media II-C. It is not obvious to me that knowledge of an invitation to invest would constitute "sufficient knowledge to raise [the plaintiffs'] suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued[,] would lead to the discovery of the injury."[123] Nothing in that letter indicates either that the opportunity was created specifically for their benefit or that it was (allegedly) redirected for Maginn's exclusive benefit, both of which are central to the II-C Claim.

---

[122] *See* Def.'s Mot. 36-38.

[123] *Pomeranz v. Museum P'rs, L.P.*, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005).

An investigation into the investment opportunity might not have revealed the full extent of the alleged harms. Mills, one of the members of the Committee that approved the issuance II-C Warrants, testified that he only became aware in 2021 that the II-C Warrants had not been issued to "encourage the New Media investors in their attitude toward the company" but rather to Maginn.[124] The record also suggests that Maginn may have cut paragraphs worth of information from the New Media II-C solicitation letter about the II-C Warrants, removing not only their strike price and their purpose but also references to their existence.[125] Finally, there is no evidence that those who signed the non-disclosure agreement to learn about the New Media II-C investment opportunity received any information.[126] I cannot conclude that plaintiffs could have reasonably discovered their II-C Claim.

If the plaintiffs were not put on inquiry notice of the II-C Claim until they deposed Maginn in 2021, tolling doctrines could apply. One such doctrine is the doctrine of inherently unknowable injuries, also known as the "discovery rule."

> Under the doctrine of inherently unknowable injuries, the running of the statute of limitations is tolled while the discovery of the existence of a cause of action is a practical impossibility. For the limitations period to be tolled under this doctrine, there must have been no observable or objective factors to put a party on notice of an injury, and

---

[124] Pls.' Opp'n Ex. C at 202-04.

[125] *See* Pls.' Opp'n Ex. F.

[126] *See* Pls.' Opp'n 3-4.

plaintiffs must show that they were blamelessly ignorant of the act or omission and the injury.[127]

"The plaintiff bears the burden of showing he was blamelessly ignorant."[128]

The plaintiffs have met their burden at this stage.[129] As described above, the plaintiffs have put forward evidence that the members of the Committee did not learn that the II-C Warrants had been used for Maginn's benefit until 2021. And it is possible that the New Media II-B members who inquired about the New Media II-C opportunity were not given information about the II-C Warrants, let alone that they might have a claim to them. Summary judgment on the II-C must be denied.

Count III, the unjust enrichment corollary to the II-C Claim, is brought in the alternative and "to the extent it is not entailed or cognizable in [the plaintiffs'] theories for breach of fiduciary duty." [130] Like the fiduciary duty claims, a three year

---

[127] *Dean Witter*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998); *see Lehman Brothers Hldgs., Inc. v. Kee*, 2021 WL 5816615, at *5 (Del. 2021) ("Where the discovery rule applies, the statute of limitations is tolled until the plaintiff discovers the facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." (quoting *Wal-Mart*, 860 A.2d at 319) (internal quotations omitted)).

[128] *Barbosa v. Bob's Canine Acad., Inc.*, 2017 WL 2492042, at *6 (Del. Ch. May 19, 2017).

[129] The plaintiffs' II-C Claim could also potentially be tolled under fraudulent concealment. "[F]raudulent concealment requires an affirmative act of concealment by a defendant." *Dean Witter*, 1998 WL 442456, at *5. Such an act must "prevent[] a plaintiff from gaining knowledge of the facts" or be "some misrepresentation that is intended to put a plaintiff off the trail of inquiry." *Id.* There is a question of material fact regarding whether Maginn stripped information from the New Media II-C solicitation letter, which could have been intended to mislead New Media II-B members. *See* Pls.' Opp'n Ex. F.

[130] Am. Compl. ¶ 185.

31

statute of limitations period applies by analogy.[131] Summary judgment on this claim is denied for the same reasons as the II-C Claim.

### B. Whether All Necessary and Indispensable Parties Have Been Joined

Finally, Maginn contends that he is entitled to judgment in his favor on the plaintiffs' declaratory judgment claim because the plaintiffs failed to join necessary and indispensable parties under Court of Chancery Rule 19.[132] In Count II, the plaintiffs seek a declaratory judgment that Deane, Wihbey, and William Cunningham are the managers of New Media II-B and that Maginn is no longer a member or manager. Maginn asserts that other members of New Media II-B exist— including members located beyond the jurisdictional reach of this court. He argues that to allow Count II to go forward would "disenfranchise" those members and that affording the plaintiffs their requested relief would amount to declaring that these individuals are no longer New Media II-B members.[133]

When considering a Rule 19 defense, the court first asks whether a person exists in whose "absence complete relief cannot be accorded" or who "claims an

---

[131] *See* notes 75-81 and accompanying text.

[132] *See* Def.'s Mot. 12-14.

[133] *Id.* at 13. The defendants also argue that New Media II-B's Operating Agreement provides that any vote to install a manager must be unanimous. *See id.* at 23; Def.'s Mot. Ex. 11 § 11. The language, however, is ambiguous.

interest relating to the subject of the action."[134]  If disposition of the pending action either "as a practical matter impair[s] or impede[s] the person's ability to protect that interest or leaves any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest," the court answers that question in the affirmative.[135]  If a party exists that should be joined but joinder is not feasible, the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."[136]  The party relying on Rule 19—here, Maginn—has the initial burden of showing that there exist persons that are necessary or indispensable to the action.[137]

Maginn falls well short.  He cites to documents from 2013—before the time period when New Media II-B members would have ended their investment in New Media II-B—for the proposition that at least 85 other members remain.[138]  Yet he also relies on a spreadsheet that seems to indicate that just two members—in addition to the plaintiffs—have not cashed the final checks that purportedly concluded their

---

[134] Ct. Ch. R. 19(a).

[135] *Id.*

[136] Ct. Ch. R. 19(b).

[137] *See Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 350 A.2d 341, 345 (Del. 1975).

[138] *See* Def.'s Mot. Ex. 1, Ex. 2.

investment in New Media II-B.[139]  That spreadsheet creates more questions than it answers.  It is undated and uncontextualized.[140]

One would expect that Maginn, as the manager of the entity for over a decade, would be able to provide concrete evidence of who owned membership interests in New Media II-B and when.  Instead, the court is asked to rely on documents that are indeterminate or stale.  There is nothing in the record demonstrating that, since 2013, anyone but the plaintiffs expressed an interest in the entity.  That is so even after Maginn allegedly attempted to dissolve New Media II-B in December 2020.[141]  The plaintiffs concede that they too lack the evidence necessary to say with certainty that no other New Media II-B members remain.  They ask the court to appoint a receiver to determine whether other members exist.[142]

Appointing a receiver is "an extraordinary, a drastic, and . . . an 'heroic' remedy."[143]  That sort of a remedy should be limited to those cases where "some real

---

[139] *See* Def.'s Opening Br. in Support of Mot. to Dismiss Ex. 7 (Dkt. 109).

[140] *See id.*

[141] *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359 (3d ed. 2004) ("The courts are reluctant to grant motions to dismiss of this type.  Thus, a Rule 12(b)(7) will not be granted because of a vague possibility that persons who are not parties may have an interest in the action.").  Though this is a Rule 56 motion, the general principle holds.

[142] Dkt. 174.

[143] *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp. LLC*, 2010 WL 3448227, at *6 (Del. Ch. Sept. 2, 2010) (quoting *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942)).

beneficial purpose will be served."[144]   Because the Delaware Limited Liability Company Act does not include a provision on appointing receivers, the court would have to rely on its general equitable powers to grant that relief.  I decline to do so. The benefit that could potentially be achieved is questionable at best—particularly given the court's finding that Rule 19 does not warrant dismissal of Count II.

## III.   CONCLUSION

Maginn's motion for summary judgment is granted in part and denied in part. That motion is granted with respect to the Warrant Claim and the Disappearing Securities Claims in Count I.  It is denied with respect to the II-C Claim in Count I, Count II, and Count III.  The plaintiffs' motion to appoint a receiver is denied.  The parties are asked to confer and submit an implementing order consistent with this opinion.

---

[144] *Id.* (quoting *Drob v. Nat'l Mem'l Park*, 41 A.2d 589, 597 (Del. Ch. 1945)).