**HUGHES TOOL COMPANY, a Delaware corporation, Plaintiff,**

v.

**FAWCETT PUBLICATIONS, INC., a Delaware corporation, and Noah Dietrich, Defendants.**

**ROSEMONT ENTERPRISES, INC., a Nevada corporation, Plaintiff,**

v.

**FAWCETT PUBLICATIONS, INC., a Delaware corporation, and Noah Dietrich, Defendants.**

Court of Chancery of Delaware, New Castle.

Sept. 11, 1974.

S. Samuel Arsht, David A. Drexler, Lewis S. Black, Jr., and Lawrence C. Ashby, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Davis & Cox, New York City, for plaintiffs.

E. D. Griffenberg, Jr., and Peter M. Sieglaff, of Potter, Anderson & Corroon, Wilmington, for defendant Fawcett Publications, Inc.

Charles F. Richards, Jr., and R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, and Steptoe & Johnson, Washington, D. C., for defendant Noah Dietrich.

MARVEL, Vice Chancellor:

The factual background of the above companion cases is found in two opinions of this Court reported in 290 A.2d 693, and 297 A.2d 428, as well as in an opinion of the Supreme Court of Delaware reported in 315 A.2d 577. In brief, on August 1, 1959, two agreements were entered into by the defendant Noah Dietrich, the first with Hughes Tool Company in which it was agreed that Mr. Dietrich would furnish consultation services to Hughes Tool Company for a period of seven years. In return, the latter agreed to pay Mr. Dietrich $100,000 before August 10, 1959. In the event, however, that Mr. Dietrich should be called upon to furnish such services for more than two hundred hours in any year, Hughes Tool Company agreed to compensate Mr. Dietrich at the rate of $130.00 per hour and further undertook to make additional payments to Mr. Dietrich in the amount of $31,260 on the 15th day of February, 1960, and a similar amount on each

following February 15 for the next consecutive eighteen years, or a total sum of $594,000. Hughes Tool Company further agreed to assign to Mr. Dietrich an insurance policy providing for monthly payments of $833.33 to Mr. Dietrich. In return, Mr. Dietrich agreed not to assert the defense of statute of limitations or laches against any cause of action vested in Mr. Hughes or Hughes Tool Company against Dietrich as of April 15, 1959 which was not then already barred by such defenses.

On the same date Mr. Dietrich entered into a second agreement, this one with Howard Hughes, president of and holder of all of the stock of Hughes Tool Company. This second agreement recited the prior agreement between Mr. Dietrich and Hughes Tool Company and went on to provide for the settlement of a pending lawsuit which had been filed by Mr. Dietrich against Howard Hughes and Hughes Tool Company. The contract in question recited the receipt by Mr. Dietrich of the sum of $100,000, the assignment of the life insurance policy referred to in the prior agreement with Hughes Tool Company and Mr. Hughes' undertaking to use his best efforts to obtain a loan for Mr. Dietrich in the principal amount of $240,000, the terms for the retiring of such loan being geared to the schedule of monthly payments to be paid to Mr. Dietrich by Hughes Tool Company under the provisions of the earlier agreement between such parties, namely $31,260 a month. It was further agreed that in the event such a loan could not be procured within the sixty days provided for in such contract that Mr. Hughes would make Mr. Dietrich an unsecured loan in the same amount and under the same terms as those provided for in the proposed loan from a third party.

In return, Mr. Dietrich acknowledged:

" * * * his continuing obligation and he so expressly covenants, that without the written consent of Hughes Tool Company, and where applicable of Howard Hughes, he will not . . . . . ei-

ther use for his own benefit or permit the disclosure to others of . . .

"1. Any information (whether true or false, laudatory or defamatory, whether of fact or of opinion) . . . . which either was acquired by Dietrich in or as a result of his employment by a confidential relationship to Hughes Tool Company, Howard Hughes, Trans World Airlines, Inc., Hughes Aircraft Company, or any of the affiliate companies.

\* \* \* \* \* \*

"2. Any information or statement of opinion with respect to the terms of this Agreement, or the Agreement executed contemporaneously herewith between Dietrich and Hughes Tool Company; or

"3. Any fact or claim of fact implying as to Dietrich either any authority to act in behalf of Hughes Tool Company or Howard Hughes or a continuing relationship of trust and confidence with them; or

"4. Any biographical or historical book, article, or other type of writing with respect to the life and affairs of Howard Hughes, or the history and affairs of Hughes Tool Company, whether or not such book, article or other writing may be covered by the provisions of the foregoing subparagraphs, and Dietrich agrees to surrender to Howard Hughes or his attorneys or agents any manuscripts or other documentation of any or all of the above in his possession or under his control . . . ."

Thereafter, on July 2, 1965, Howard Hughes purported to assign and sell to the plaintiff Rosemont Enterprises Inc.:

" * . * * the exclusive * * * right to publish, print, produce * * * or otherwise exploit in any manner his (Hughes') name."

However, while the contract alludes to the parties' recognition of the:

" * * * public interest which has been displayed in the accomplishments

personality and achievements of Grantor, the use of his name, picture likeness, personality, personal history or biography has become a valuable right subject to commercial exploitation  *  *  *",

nowhere in the Hughes-Rosemont contract is there any reference to the Dietrich covenant not to disclose any information, whether laudatory or derogatory, about Howard Hughes or Hughes Tool Company, and no express assignment of rights to Mr. Dietrich's aforesaid covenant of silence, although such contract went on to provide that:

"Grantor agrees that Grantee shall also have the right to take whatever action it may deem necessary  *  *  *  to prevent and restrain anyone else from publishing, printing, producing  *  *  * or otherwise exploiting in any manner whatsoever Grantor's name  *  *  * and that Grantee may exercise all rights which Grantor may have to prevent and restrain anyone else from engaging in any such activities."

Rosemont for its part agreed in such contract that it would "  *  *  *  pay Grantor sixty percent (60%) of the net proceeds derived by Grantee from the use of the rights granted  .  .  ." Next, the assignment in question provided that while neither the agreement nor the rights of the grantee thereunder were assignable or transferable by grantee "  .  .  .  Grantee shall have the right to license others to exercise the rights granted to it by this Agreement provided that Grantee first obtains the approval of Grantor."

Mr. Dietrich having undertaken to have published through the facilities of the defendant Fawcett Publications, Inc. an unflattering book concerned with Howard Hughes and Hughes Tool Company, the present actions of the latter corporation and of Rosemont Enterprises, Inc. were filed.

The complaint of Hughes Tool Company recites the settlement of the Dietrich action against Howard Hughes and Hughes Tool Company, Dietrich's reciprocal covenant of silence concerning his knowledge of the personal affairs of Howard Hughes and of Hughes Tool Company, acquired through his many years of association with the Hughes' organization, going on to allege that a book concerning Mr. Hughes and his wholly owned corporation, Hughes Tool Company, purportedly written by Mr. Dietrich, was about to be published by the defendant Fawcett Publications, Inc. in alleged violation of Mr. Dietrich's promise to the contrary.

The prayers of the first cause of action of such complaint seek an accounting of profits allegedly improperly made by Mr. Dietrich as a result of the above noted divulgences and threatened publication. In the prayers of a second cause of action a further accounting by both Mr. Dietrich and Fawcett Publications, Inc. is sought for their alleged improper profits gained from the divulgences in question, the return of all moneys paid by Hughes Tool Company in connection with the settlement agreement with Mr. Dietrich, and the award of damages suffered by Hughes Tool Company as a result of defendants' alleged improper action. Also sought is the establishing of a constructive trust in favor of Hughes Tool Company. Finally, an order was sought directing the surrender by the defendants of the manuscript of Dietrich's purported biography entitled "Howard, The Amazing Mr. Hughes", the assignment to Hughes Tool Company by defendants of the copyright to such writing being also prayed for.

The Rosemont complaint also recites the settlement of the Dietrich suit against Howard Hughes and Hughes Tool Company, Mr. Dietrich's covenant of silence, the July 2, 1965 agreement whereby Rosemont Publications, Inc. allegedly acquired the exclusive right to publish Howard Hughes' life story, and the unfair competition threatened by the imminent printing and sale of the Dietrich biography of Howard Hughes by the defendant Fawcett Publica-

tions, Inc. in alleged violation of the settlement made with Mr. Dietrich.

The prayers of such complaint are that Mr. Dietrich and Fawcett Publications be required to account for their wrongful conduct towards Rosemont Enterprises, Inc., the establishment of a constructive trust as to the profits derived from the transaction complained of by both Mr. Dietrich and Fawcett Publications, Inc., as well as to those sums paid to Mr. Dietrich by Hughes Tool Company under the terms of their contract. Also sought was the entry of an order directing Mr. Dietrich and Fawcett Publications, Inc. to surrender the Dietrich manuscript to Rosemont Enterprises, Inc. and requiring the assignment of the copyright to such writing to such plaintiff.

In each of these related actions the defendants Fawcett Publications, Inc. and Noah Dietrich moved to dismiss the complaints for lack of jurisdiction (10 Del.C. § 342), for failure to state a claim and as well under Rule 19 for failure to join Howard Hughes and others affiliated with his interests as parties.

By mandate of the Supreme Court of Delaware the jurisdiction of this Court to decide the basic matters in issue has been determined and this is the opinion of this Court as to those matters still undecided.

While a question has been raised as to the constitutional rights of Mr. Dietrich under the first amendment to the Constitution of the United States to write freely about Howard Hughes and the Hughes Tool Company notwithstanding his covenant of silence, a preliminary question must first be dealt with, namely that of whether or not this case may properly proceed without the presence of Howard Hughes and those other entities [1] contractually endowed with the presumptive right to enforce the covenant made by Mr. Dietrich.

■ Turning to the contracts in issue, it would appear, first of all, that the provisions of the agreement between Mr. Dietrich and Howard Hughes recited above, which are to be construed under the law of California where they were agreed to, were presumptively designed to protect the joint rather than the several interests of Howard Hughes and Hughes Tool Company, California Civil Code § 1431. Furthermore, paragraph V of such agreement provides that the covenants made by Mr. Dietrich " * * * shall be binding upon and enure to the benefit of, as though expressly named therein * * *" of Mr. Hughes, Hughes Tool Company and those others named as beneficiaries of such contract. In addition, paragraph III of the agreement provides:

> " * * * Dietrich further acknowledges that a breach by him of the terms of this Paragraph III will result in irreparable harm to Hughes Tool Company and Howard Hughes and that, in addition to any other remedies they may elect to assert, they shall have the right to enjoin further breaches by action brought in any court of competent jurisdiction."

■ In an effort to counter the implications of such indicia of joint interest on the part of Howard Hughes and Hughes Tool Company in the Dietrich covenants, Hughes Tool Company claims to be a third party beneficiary of the Dietrich covenant, however, third party beneficiaries are entities " * * * having enforceable rights created in them by contract to which they are not parties and for which they give no consideration.", 4 Corbin on Contracts § 774, and there can be no doubt but that Hughes Tool Company is a contracting party despite the fact that its beneficial interest in Mr. Dietrich's covenant of silence would appear to be incidental rather than direct. Moreover, Hughes Tool Company

---

1. Hughes Tool Company, Hughes Aircraft Company, Trans World Airlines, Inc., Howard Hughes Medical Institute, RKO Teleradio, Inc., Atlas Corporation, the subsidiaries and affiliates of the above, and any other corporation, firm or individual with which or in which any of the above may have been associated with directly or indirectly.

has alleged that it paid Mr. Dietrich $694,-000 " * * * in consideration of Dietrich's agreement not to use or disclose * * * any information about Hughes Tool Company or Howard Hughes." Thus, according to the allegations of the complaint, Hughes Tool Company, having paid consideration under its contract, is at the most merely a joint obligee with Howard Hughes of the Dietrich covenants, and one joint obligee under a contract may not bring an action to enforce a covenant without joining the other contracting party, 4 Corbin on Contracts, § 939.

■ Thus, in the language of Rule 19, Howard Hughes, who did not, in my opinion, by his contract with Rosemont absolutely surrender the rights accorded him under the provisions of his contract with Mr. Dietrich, is a party who:

" * * * claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may * * * leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Thus, while the contract in issue provides that any biographical material about Hughes as well as data about Hughes Tool Company are to be surrendered to Howard Hughes or his attorneys or agents, the complaint of Hughes Tool Company asks that the manuscript and copyright in question be surrendered to it. In other words, there would appear to be a substantial possibility under the contractual provisions here in issue, in light of the relief sought, that regardless of the ultimate result reached in this litigation on the merits,

that Mr. Hughes might be able successfully to sue Mr. Dietrich and Fawcett Publications, Inc. at a later date in another action, and an important purpose of Rule 19 is to prevent the coming to pass of such a happening. In addition, in light of the fact that an accounting is sought against Fawcett Publications, Inc., in which Howard Hughes claims an interest, all claimants to the funds in issue should be joined as parties in order to arrive at a fair result. Compare Gorham v. Edwards (S.D.N.Y.), 160 F.Supp. 928.

I accordingly conclude that in a situation in which his presence as a party appears to be clearly feasible, Rule 19 here requires the joinder of Howard Hughes as an additional party in the first instance to these cases because his rights under the contracts here in issue make him presumptively a joint obligee with his corporation, Hughes Tool Company, the contracts in question having been entered into in California. He is accordingly, in my opinion, clearly an indispensible party to these actions. Compare Bryman's Inc. v. Stute, (C.A. 5), 312 F.2d 585.

Finally, I am of the view that in a situation in which Mr. Hughes has apparently deliberately sought to insulate himself from direct involvement in the bringing of these actions by causing a purported assignment of rights to be made to what may prove to be his alter ego, namely Rosemont Enterprises, Inc., the ends of justice require that he be joined as a party plaintiff to these actions before they can proceed further. If his appearances are not made within a period of sixty days from the entry of an order hereon, these cases will be dismissed.

An appropriate form of order may be presented on notice.