HUGHES TOOL COMPANY, Plaintiff Below, Appellant,

v.

FAWCETT PUBLICATIONS, INC. and Noah Dietrich, Defendants Below, Appellees.

ROSEMONT ENTERPRISES, INC., Plaintiff Below, Appellant,

v.

FAWCETT PUBLICATIONS, INC. and Noah Dietrich, Defendants Below, Appellees.

Nos. 19,1975 and 20,1975.

Supreme Court of Delaware.

Submitted Sept. 10, 1975.

Decided Dec. 19, 1975.

---

**342**

S. Samuel Arsht, David A. Drexler and Martin P. Tully, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs-appellants.

E. Dickinson Griffenberg, Jr., of Potter Anderson & Corroon, Wilmington, for defendant-appellee Fawcett Publications, Inc.

Charles F. Richards, Jr., and R. Franklin, Balotti, of Richards, Layton & Finger, Wilmington, and Steptoe & Johnson, Washington, D.C., of counsel, for defendant-appellee Noah Dietrich.

Before DUFFY and McNEILLY, Justices, and WALSH, Judge.

DUFFY, Justice:

Plaintiffs appeal from an order of the Court of Chancery dismissing their respective actions for failure to join Howard R. Hughes as a party to each of them. The facts are found in three opinions by the Court of Chancery, 290 A.2d 693 (1972), 297 A.2d 428 (1972), and 325 A.2d 621 (1974), and in an opinion by this Court, Del., 315 A.2d 577 (1974). We discuss them here only to the extent necessary to the decision.

I

Defendant Noah Dietrich was a long-time confidant of Hughes and, at the time of termination of their relationship in 1957, was executive vice president and a director bf Hughes Tool Company (HTCo). In August 1959 Dietrich made two agreements in settlement of actions which he had brought against Hughes and HTCo.

The contract with Hughes provided that Dietrich would not disclose, without the written consent of HTCo and, "where applicable," of Hughes:

"1. Any information (whether true or false, whether laudatory or defamatory, whether of fact or of opinion . . .) which either was acquired by Dietrich in

or as a result of his employment by or confidential relationship to Hughes Tool Company, Howard Hughes, Trans World Airlines, Inc., Hughes Aircraft Company, or any of the affiliate companies, . . . ."

. . . . . .

"4. Any biographical or historical book, article, or other type of writing with respect to the life and affairs of Howard Hughes, or the history and affairs of Hughes Tool Company, whether or not such book, article or other writing may be covered by the provisions of the foregoing subparagraphs, and Dietrich agrees to surrender to Howard Hughes or his attorneys or agents any manuscripts or other documentation of any or all of the above in his possession or under his control."

Dietrich's contract with HTCo provided that he would furnish consultation services to the Company for seven years in return for which he was to be paid $100,000, annual payments of $31,260 for 18 years, and other compensation. Dietrich agreed not to assert a Statute of Limitations or laches defense to any action against him by Hughes or HTCo not barred as of April 15, 1959.

Although separate in form, the agreements were implicitly interdependent and in settlement of all claims which Dietrich had against Hughes and HTCo and which either of them had against him.

On July 2, 1965 Hughes assigned to plaintiff Rosemont Enterprises, Inc. the exclusive right "to publish, print, produce . . . or otherwise exploit in any manner whatsoever his [Hughes'] name . . . ."

Thereafter, Dietrich agreed with defendant Fawcett Publications, Inc., that it would publish a manuscript by him which was, in effect, a biography of Hughes entitled, "Howard, The Amazing Mr. Hughes." That was the event which led to this lawsuit. Rosemont alleges that the biography was based on Dietrich's association with Hughes and HTCo, in violation of both its rights and the settlement agreements.

Plaintiffs seek an accounting of profits made from the book, surrender of the manuscript, assignment of the copyright, the return of all moneys paid under the settlement agreements, and punitive damages.

Fawcett and Dietrich moved to dismiss each action on the ground, *inter alia*, that the complaints failed to join Hughes, an "indispensable" party, under Chancery Rule 19. The Vice Chancellor agreed, holding that if Hughes did not appear within sixty days, each case would be dismissed. Within that period, plaintiffs moved to vacate each order on the basis of a letter "on behalf of" Hughes from Chester C. Davis, Esquire, to S. Samuel Arsht, Esquire, Delaware counsel for plaintiffs; the letter states:

"This is to advise you on behalf of Howard R. Hughes that any rights which he may have to assert claims against the above-described defendants on the basis of the matters described in the complaints in the above-described civil actions, which are different from or greater than the rights asserted by the plaintiffs therein, are hereby waived, if and only when the above-captioned actions proceed to final judgment from which there lies no further appeal. Mr. Hughes recognizes that such final judgment will adjudicate any such rights as he may have, and he will not assert such rights in any subsequent action.

You are authorized to file this letter with the Court."

The Vice Chancellor denied plaintiffs' motions and dismissed the complaints when Hughes did not appear within the specified time. These appeals followed.

II

The determinative issue is whether or not the case may properly proceed without the presence of Hughes.

Plaintiffs argue that the Chancery Court applied an incorrect standard in determining that Hughes was an indispensable party and that his joinder was feasible under Rule 19. The thrust of the argument is that the Court erred because Hughes was not subject to service of process in Delaware and, in the absence of such a finding, the Court could not conclude that joinder was feasible. Consequently, say plaintiffs, the balancing test of Rule 19(b) should have been applied.

In our view, Rule 19(a) governs and, when applied, it controls the result. That Rule provides in part:

"(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

■ The Rule categorizes those persons whose joinder should be required to accord complete adjudication of claims at issue. Thus it provides that a person "shall be joined as a party" if specified conditions exist. The Rule is mandatory in letter as well as in spirit and joinder will be ordered once the Court finds that its terms are met. One such term, (2)(ii), is that a

person "shall be joined" if he claims an interest which would leave a present party "subject to a substantial risk of incurring . . . inconsistent obligations." The latter could occur if two fact-finders, for example, determine substantially the same claim in different lawsuits.

■ Considered in that light, Hughes is clearly a party "to be joined if feasible." *Schutten v. Shell Oil Company*, 5 Cir., 421 F.2d 869 (1970), because, without doubt, he has an interest in the litigation. The settlement agreements were designed to protect the joint interests of both Hughes and HTCo, they are interdependent and, indeed, Section V of the Dietrich-Hughes contract provides that it ". . . shall be binding upon and inure to the benefit of, as though expressly named therein, Hughes, Hughes Tool Company" and other beneficiaries.[1] In addition, Section III provides:

"Dietrich further acknowledges that a breach by him of the terms of this Paragraph III will result in irreparable harm to Hughes Tool Company and Howard Hughes and that, in addition to any other remedies *they* may elect to assert, *they* shall have the right to enjoin further breaches by action brought in any court of competent jurisdiction." (Emphasis added.)

Significantly, the right of action is stated in the conjunctive: "they," HTCo and Hughes, "have the right to enjoin further breaches of action . . . ." It follows that they are joint obligees, Cal.Civil Code, § 1431,[2] and both are necessary parties to enforce the covenants. 4 *Corbin on Contracts* § 939; 3A *Moore's Federal Practice* § 19.11. Compare *Bry-Man's Inc. v. Stute*, 5 Cir., 312 F.2d 585 (1963).

---

1. The other beneficiaries are "Hughes Aircraft Company, Trans World Airlines, Inc., Howard Hughes Medical Institute, RKO Teleradio, Inc., Atlas Corporation, the subsidiaries and affiliates of the above companies and any company, corporation, firm, or individual with which or in which any of the

above named companies may have been or may be associated, connected with, or interest [sic] in, directly or indirectly."

2. The contract was made in California and the parties tacitly agree that the law of that State governs.

We also note that under the contract, any biographical material about Hughes, as well as data about HTCo, is to be surrendered to "Hughes or his attorneys or agents." Here, the parties seek an order requiring defendants to surrender the Dietrich manuscript of his book about Hughes and an assignment of the copyright. As to Rosemont, under its agreement with Hughes he is to be paid, *inter alia*, 60% of the net proceeds derived from exploitation of his name; the agreement does not mention a right in Rosemont to enforce a no-book covenant. Compare *Hirshon v. United Artists Corporation*, 100 U.S.App.D.C. 217, 243 F.2d 640 (1952).

Given these facts and the relief sought, we conclude that Hughes is a person who should be joined as a party because his absence would leave defendants subject to substantial risk of incurring inconsistent obligations.

Plaintiffs argue that the Chancery Court mistakenly found that joining Hughes was feasible because it did not make a finding that he was subject to service of process under the Rule. Subparagraph (a) of the Rule is written in terms of one who is "subject to service of process" and, in that sense, its efficacy depends upon availability to process. Subparagraph (b), of course, contemplates a finding that one who should be joined "cannot be made a party" before the Court begins applying the factors which determine the fate of the action. In this case, the critical question centers not so much on differences between the two sections of the Rule but, rather, on who bears the burden of showing that joinder of Hughes is "feasible" or that he "cannot" be made a party. Normally, the party who relies on Rule 19(a) and who wants the motion granted might be expected to bear the burden of showing that the nonparty in question is not subject to service. But the motion should be tested not on the basis of a generality but on its own facts which are before the Court.

As to HTCo, the fact is, and the complaint alleges, that Hughes is its sole shareholder. Under this circumstance, who bears the burden of showing that Hughes is not subject to process or that he cannot be made a party? It appears to us that the Trial Court looked realistically at the alignment of interests and, after determining that Hughes should be joined, implicitly concluded that he was subject to service within the requirement of the Rule. In our view that determination was correct; any other conclusion would elevate form over equity and good conscience.

Turning to the claim by Rosemont, we affirm the Vice Chancellor's conclusion for essentially the same reason. Rosemont wants its lawsuit to go forward, the Court determined that the presence of Hughes was essential to accord complete relief, it gave Hughes the opportunity to appear and certainly Rosemont had an opportunity to compel his appearance by sequestration or otherwise, Hughes did not appear and Rosemont made no showing of any effort to compel his appearance. Under the circumstances, with Hughes retaining an interest in the contract, we think that the requirements of Rule 19(a) have been met and that the result is fair.

Plaintiffs argue that the Chancery Court did not apply the balancing test of Rule 19(b).[3] In the view we take of the case,

3. Rule 19(b) provides:
   "*Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a) (1) and (2) hereof cannot be made a party, the Court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the Court include: First, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

that part of the Rule, which applies only when it has been shown that the person involved "cannot be made a party," is not relevant. There has been no showing that Hughes cannot be made a party and thus we do not reach the balancing test.

## IV

Finally, we agree that the Vice Chancellor correctly concluded that the Davis letter was ineffective in waiving all rights Hughes has in the action. Cf. 3A *Corbin on Contracts* § 752. At best, it is ambiguous as to what rights are being waived, particularly when waiver is said to be effective "if and only when the . . . actions proceed to a final judgment from which there lies no further appeal." Under this language Hughes apparently has waived no rights at this time, which is prior to ultimate adjudication. Therefore, both as a matter of law and fact, the Davis letter does not constitute an unequivocal waiver by Hughes of his interest in the ultimate results of the litigation.

\* \* \*

Affirmed.