# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KRISTEN MARY DE SUAREZ D'AULAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2023-0074-LWW |
| PATRICK MARIE STEPHANE DE SUAREZ D'AULAN, | ) ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| W. NEVINS MCCANN, ESQ A/K/A WILLIAM NEVINS MCCANN and ALASTOR CORPORATION, | ) ) ) ) | |
| Nominal Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: March 28, 2024
Date Decided: June 27, 2024

John G. Harris, HALLORAN FARKAS KITTILA LLP, Wilmington, Delaware; *Counsel for Plaintiff Kristen Mary de Suarez D'Aulan*

Brian E. O'Neill, ELLIOTT GREENLEAF, P.C., Wilmington, Delaware; Jeffrey H. Zaiger & Judd Linden, ZAIGER LLC, New York, New York; *Counsel for Nominal Defendants W. Nevins McCann and Alastor Corporation*

**WILL, Vice Chancellor**

This case concerns a series of orders issued in a divorce proceeding before an English family court. One party to the divorce—the plaintiff here—resides in London. The other—the defendant—may be living in France or perhaps Morocco.

The primary marital asset in the divorce is the couple's interests in Alastor Corporation, a Delaware corporation that owns wine making operations and vineyards in Argentina. When the divorce was initiated, the parties each owned a 50% interest in the company. Neither party is an Alastor director or officer.

The English court ordered the sale of Alastor, set a sale price, and put the plaintiff in charge of the sale. The defendant was to contribute a portion of his sale profits to his ex-wife. But before the sale process began, he announced that he had transferred his Alastor shares to a Uruguayan entity called Turnal S.A.

The plaintiff then sought to join Turnal to the divorce proceeding. The English court granted her request, though Turnal never appeared and both personal jurisdiction over and service of process on Turnal were questionable. The court also entered an order deeming void the defendant's share transfer to Turnal.

The defendant disregarded these orders. Rather than pursue relief in the English family court, in Uruguay, or in Argentina, the plaintiff turned to Delaware. She asks that this court recognize and enforce the English family court's judgments under common law principles of international comity. The relief sought includes

1

ordering the defendant to transfer his Alastor shares to the plaintiff and causing Alastor to record the transfer and issue the shares in her name.

The plaintiff is rightly frustrated with her situation. If her allegations are true, the defendant has put up roadblocks to a smooth divorce. But this court cannot clear them simply because the English court's orders concern shares of a Delaware entity. There are several complicating factors.

For one, Turnal holds a stock certificate representing the Alastor shares previously held by the defendant. Turnal is the stockholder of record according to Alastor's books. It was also a party to the English court's transfer order that the plaintiff asks me to enforce. Yet it is absent and cannot feasibly be joined.

Without clarity on the holder of the Alastor shares at issue, I cannot grant the relief the plaintiff seeks. Beyond that, the orders she asks me to recognize would supplant the authority of Alastor's board to sell the company. That says nothing of the lingering questions over whether international comity supports recognizing and enforcing the English court's orders.

As the matter stands, I cannot proceed without impeding the rights of an indispensable party beyond the reach of Delaware service of process. Should the plaintiff secure relief from Turnal in a court of competent jurisdiction, she may raise anew her request that I recognize and enforce the English court's orders. For now, the action is dismissed without prejudice.

# I.    BACKGROUND

The following background is drawn from the Verified Amended Complaint for Recognition and Enforcement of Foreign Country Judgments (the "Complaint") and the documents it incorporates by reference.[1]

## A.    Alastor Corporation

Plaintiff Kristen Mary De Suarez D'Aulan and defendant Patrick Marie Stephane De Suarez D'Aulan are former spouses who, before their divorce, lived in London, England.[2]  Ms. D'Aulan continues to reside in England.[3]  Mr. D'Aulan is believed to reside in France or Morocco.[4]

During their marriage, the two formed nominal defendant Alastor Corporation as a Delaware corporation.[5]  Ms. D'Aulan and Mr. D'Aulan each owned a 50% interest in the company.[6]  Nominal defendant W. Nevins McCann was the sole director and officer of Alastor.[7]

---

[1] Verified Am. Compl. for Recognition and Enforcement of Foreign Country Js. (Dkt. 31) ("Compl.") ¶ 10; *see In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170-71 (Del. 2006).

[2] Compl. ¶¶ 10-11.

[3] *Id.* ¶ 10.

[4] *Id.* ¶ 11; Compl. Ex. M.

[5] Compl. ¶ 12.

[6] *Id.* ¶ 2.

[7] *Id.* ¶ 3.

Alastor owns and controls two Argentinian subsidiaries: La Casa del Ray S.A. and Alta Vista S.A. The companies collectively own the assets and operate the business of producing, marketing, and selling wine products under the "Alta Vista" family of brands.[8] The Alta Vista winery and vineyards are in Argentina.[9]

## B. The Divorce Proceedings

In August 2018, Ms. D'Aulan filed a petition for divorce in the Central Family Court of English and Wales (the "English Court").[10] At a February 26, 2020 hearing before the English Court, the parties reached a negotiated agreement outlining the division of marital property.[11] The agreement contemplated the "[s]ale of the Alastor company, or its assets or some of them."[12] It also provided that Mr. D'Aulan "will allocate for the benefit of [the parties'] children" £2 million from the sale of Alastor "to assist [Ms. D'Aulan] in buying a home."[13]

At the February 26, 2020 hearing, the English Court formalized the parties' agreement in a so-called "Rose Order."[14] The parties to the Rose Order are Ms. D'Aulan and Mr. D'Aulan.

---

[8] *Id.* ¶ 12.

[9] *Id.*

[10] *Id.* ¶ 18.

[11] *Id.* ¶ 20; Compl. Ex. B.

[12] Compl. ¶ 1.

[13] Compl. Ex. B ¶ 8; *see* Compl. ¶ 21.

[14] *Id.* ¶ 22 & n.4; Compl. Ex. C (Rose Order).

On February 26, 2021, the English Court held a hearing to finalize the divorce and financial arrangements. The English Court issued a "Financial Order" that perfected and sealed the Rose Order.[15] The Financial Order provides that Alastor and its subsidiaries would be "sold forthwith."[16] The companies would be "placed on the open market for sale immediately for such price as may be agreed between the parties or in default of agreement determined by the court."[17] The Financial Order also outlines how the sale proceeds would be distributed between the parties.[18]

The divorce became effective on March 3, 2021.[19] A "final hearing" before the English Court was held on November 25, 2021.[20] After the hearing, the English Court issued a Final Opinion and Final Order, both dated November 25.[21] The Final Opinion details the case history.[22] The Final Order sets out the requirements concerning the divorce.[23]

---

[15] Compl. ¶ 28; Compl. Ex. D (Financial Order).

[16] Compl. Ex. D. ¶ 21.

[17] *Id.*

[18] *Id.*

[19] Compl. ¶ 33.

[20] *Id.* ¶ 34.

[21] Compl. Ex. E (Final Opinion); Compl. Ex. F (Final Order).

[22] Compl. Ex. E.

[23] Compl. Ex. F.

The Final Order gave Ms. D'Aulan "sole conduct of the sale of Alastor and its subsidiary companies."[24] Alastor and its subsidiaries were to be marketed for $21 million but "sold for not less than [$18 million]" by a designated broker.[25] Mr. D'Aulan was ordered to "sign all documents" needed "to facilitate the sale" within seven days of service.[26]

The English Court also granted Ms. D'Aulan's application for an order requiring Mr. D'Aulan to sign joint and irrevocable instructions (as amended by the English Court, the "Irrevocable Instructions") directing McCann to take defined steps towards selling Alastor.[27] In January 2022, the Irrevocable Instructions were executed by Ms. D'Aulan and by an English judge on behalf of Mr. D'Aulan.[28]

## C. The Share Transfer and Delaware Litigation

In April 2022, Mr. D'Aulan transferred his Alastor shares to Turnal S.A., an entity incorporated under the laws of and headquartered in Uruguay.[29] The transfer

---

[24] *Id.* ¶ 21(a).

[25] *Id.* ¶ 21(c).

[26] *Id.* ¶ 20(d).

[27] Compl. ¶ 51; Compl. Ex. F.

[28] Compl. Ex. H (Irrevocable Instructions); *see* Compl. Ex. F ¶ 20(d) (giving a judge permission to sign if Mr. D'Aulan failed to timely comply with the Final Order); Compl. Ex. G ¶ 2; Compl. ¶ 55.

[29] *Id.* ¶ 63; Compl. Ex. L (Transfer Order) ¶ 1.

was purportedly made pursuant to an agreement dated April 21, 2022.[30]  On January 11, 2023, McCann notified Ms. D'Aulan of the share transfer.[31]

Ms. D'Aulan filed the present action in this court on January 24, 2023.[32] Mr. D'Aulan was named a defendant and McCann and Alastor were named nominal defendants.  Ms. D'Aulan sought the recognition and enforcement of the Rose Order, Financial Order, Final Opinion, Final Order, and Irrevocable Instructions.[33]  She also requested that the court seize Mr. D'Aulan's Alastor shares to enforce the English judgments.[34]

By February 13, Alastor had officially recognized the Turnal share transfer on its stock ledger and issued a share certificate to Turnal.[35]

On February 28, Ms. D'Aulan filed a second action in this court.[36]  She named Mr. D'Aulan as a defendant and Alastor and Turnal as nominal defendants.  She

---

[30] Compl. Ex. S (transfer agreement in Spanish); *see also* Compl. Ex. T (uncertified English translation of the transfer agreement).  Mr. D'Aulan told the English Court that he received no consideration for the shares.  Compl. Ex. N (hearing transcript) at 21, 25; *but see* Compl. Ex. T.  The record lacks evidence of whether that is so.

[31] Compl. ¶ 64.

[32] Verified Compl. for Recognition and Enforcement of Foreign-Country Js. (Dkt. 1).

[33] *Id.* ¶¶ 67-76, 78-84.

[34] *Id.* ¶ 84.

[35] Compl. ¶ 72.

[36] *D'Aulan v. Alastor Corp., et al.*, C.A. No. 2023-0256-LWW (Dkt. 1).

7

sought to nullify and invalidate the share transfer to Turnal. The matter has been largely dormant since the fall of 2023.

### D. The English Transfer Litigation

In April 2023, Ms. D'Aulan filed an application in the English Court to set aside Mr. D'Aulan's transfer of Alastor shares to Turnal.[37] Turnal, as transferee, was named as a putative respondent. It was served with a physical copy of the application on June 7, 2023.[38]

On June 8, the English Court held a hearing on Ms. D'Aulan's application to add Turnal as a respondent and to void the transfer.[39] Mr. D'Aulan appeared; Turnal did not.[40] After the hearing, the court issued a bench ruling (the "*Ex Tempore* Judgment") and entered a corresponding order (the "Transfer Order").[41] The court joined Turnal as a respondent to the divorce proceedings.[42] It also determined to "set aside" the transfer and stated that Turnal lacked any "legal or beneficial interest

---

[37] Compl. ¶ 74.

[38] *Id.* ¶ 76; Compl. Ex. L ¶ 13. It was also emailed a copy of the application on May 18, 2023. Compl. ¶ 76; Compl. Ex. L ¶ 13.

[39] Compl. ¶ 77; *see* Compl. Ex. N.

[40] Compl. ¶ 78.

[41] Compl. Ex. J (*Ex Tempore* Judgment); Compl. Ex. L.

[42] Compl. Ex. L ¶ 19; *see also* Compl. Ex. J.

in Alastor or its subsidiary companies."[43]  Turnal was given the opportunity to apply to set aside the order by July 6, 2023 but never appeared.[44]

The Transfer Order required Mr. D'Aulan to transfer interests in Alastor and its subsidiaries to Ms. D'Aulan.[45]  Mr. D'Aulan was to sign all documents necessary to transfer the shares to Ms. D'Aulan within 72 hours of service or an English judge would sign on his behalf.[46]  Mr. D'Aulan failed to timely sign the relevant documentation and an English judge signed for him on July 18.[47]

### E.    The Amended Complaint

On August 2, 2023, Ms. D'Aulan filed an amended Complaint in this court.[48] She seeks recognition of the "English Judgment," defined to include the Rose Order, Financial Order, Final Opinion, Final Order, Irrevocable Instructions, *Ex Tempore* Judgment, and Transfer Order.[49]  She also asks that the court order Alastor to record the transfer of Alastor shares to her and "issue a new share certificate" in her name.[50]

---

[43] Compl. Ex. L ¶ 20.  The English Court acknowledged that Uruguay is not a party to the Hague Convention.  Compl. Ex. N at 11-13.

[44] Compl. Ex. L ¶ 23; Compl. ¶ 104.

[45] Compl. Ex. L ¶ 21; Compl. ¶ 102.

[46] Compl. Ex. L ¶ 22; Compl. ¶ 103.

[47] Compl. ¶ 106; Compl. Ex. R.

[48] Dkt. 31.

[49] Compl. ¶ 55 n.7.  Ms. D'Aulan later stipulated that she is not seeking relief concerning the Irrevocable Instructions.  Dkt. 35 ¶ 4.

[50] Compl. ¶¶ 147-149.

In the alternative, she requests that the Alastor shares be seized to satisfy Mr. D'Aulan's financial obligations under the English Judgment.[51]

Ms. D'Aulan served Mr. D'Aulan by numerous means. When he failed to appear in the action despite acknowledging notice of it, she moved for default judgment. A default judgment was granted against Mr. D'Aulan on February 9, 2024.[52]

Meanwhile, the nominal defendants moved to dismiss the Complaint.[53] The motion was fully briefed on October 30.[54] The parties were invited to make supplemental submissions on the effect of the default judgment against Mr. D'Aulan. The nominal defendants' supplemental submission was filed on March 20.[55] Oral argument on the motion to dismiss was held on March 28 and the matter was taken under advisement.[56]

---

[51] *Id.* ¶¶ 151-57.

[52] Dkt. 64.

[53] Dkt. 34; Nominal Defs.' Opening Br. in Supp. of Nom. Defs.' Mot. to Dismiss Pl.'s Verified Am. Compl. (Dkt. 38) ("Nom. Defs.' Opening Br.").

[54] Reply Br. in Supp. of Nominal Defs.' Mot. to Dismiss Pl.'s Verified Am. Compl. (Dkt. 45).

[55] Suppl. Br. in Supp. of Nominal Defs.' Mot. To Dismiss Pl.'s Verified Am. Compl. (Dkt. 70).

[56] Dkts. 71-72.

## II.    ANALYSIS

The nominal defendants move for dismissal of the Complaint on two grounds. They argue that dismissal is appropriate under Court of Chancery Rule 12(b)(7) because Ms. D'Aulan failed to join an indispensable party under Rule 19. They also argue that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

I begin by considering the nominal defendants' Rule 19 arguments, which implicate the Transfer Order and *Ex Tempore* Judgment. I conclude that Turnal is a necessary party that cannot feasibly be joined. I go on to consider whether the Complaint states a reasonably conceivable claim concerning the other portions of the English Judgment. Until Turnal's interests are resolved, however, I cannot fairly recognize and enforce the English Court's orders regarding a sale of Alastor. Dismissal of the Complaint without prejudice is warranted.

### A.    Rule 19 Arguments Regarding The Transfer

"Under Court of Chancery Rule 12(b)(7), a defendant may move for dismissal because of a failure to join a party under Rule 19."[57] Rule 19 requires that the court first considers whether there is a person in whose "absence complete relief cannot be accorded" or who "claims an interest relating to the subject of the action."[58] If

---

[57] *Germaninvestments AG v. Allomet Corp.*, 2020 WL 6870459, at *5 (Del. Ch. Nov. 20, 2020).

[58] Ct. Ch. R. 19(a).

11

the court concludes an absent person should be joined under Rule 19(a), it must then decide whether joinder is feasible.[59] If joinder is impracticable, the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."[60] The parties relying on Rule 19 have "the initial burden of showing that there exist[s] [a] person[] that [is] necessary or indispensable to the action."[61]

The nominal defendants have met their burden, and the plaintiff has not rebutted it with a showing that joinder is unnecessary.[62] Turnal is an indispensable party to the action as it concerns the *Ex Tempore* Judgment and Transfer Order. Turnal cannot feasibly be joined. The action cannot "in equity and good conscience" proceed without it.[63]

### 1. Turnal Is a Necessary Party.

Rule 19(a) states:

A person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if[:]

---

[59] *See Germaninvestments*, 2020 WL 6870459, at *5; Ct. Ch. R. 19(b).

[60] Ct. Ch. R. 19(b).

[61] *Deane v. Maginn*, 2022 WL 624415, at *13 (Del. Ch. Mar. 2, 2022) (quoting Ct. Ch. R. 19(b)); *see also Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 350 A.2d 341, 345 (Del. 1975).

[62] *See* Charles Alan Wright et. al., *Fed. Prac. & Proc.* § 1609 (3d ed. updated June 2024).

[63] Ct. Ch. R. 19(b).

12

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter, impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.[64]

The nominal defendants argue that Turnal must be joined under Rule 19(a) because Ms. D'Aulan seeks relief involving Turnal's interests in the disputed Alastor shares.[65]

Delaware courts have recognized that "when litigation places at issue the validity or enforceability of property rights, such as a party's rights under an agreement, then the holders of the property rights have an interest in the subject matter of the action such that they should be joined as parties."[66] "[W]hen shares of a Delaware corporation are in dispute, and all parties with an interest in that property have not been joined, 'there is a substantial risk that the court cannot accord complete relief in the [missing parties'] absence.'"[67]

---

[64] Ct. Ch. R. 19(a).

[65] Nom. Defs.' Opening Br. 16-18; *see* Compl. Ex. J; Compl. Ex. L.

[66] *Germaninvestments*, 2020 WL 6870459, at *8 (quoting *Perry v. Neupert*, 2017 WL 6033498, at *12 (Del. Ch. Dec. 6, 2017)).

[67] *Id.*

Ms. D'Aulan argues that Turnal no longer has an interest in the Alastor shares because the English Court set aside the transfer to it.[68] The practical reality, though, is that Alastor's stock ledger presently lists Turnal as the owner and Turnal holds a stock certificate for the shares.[69] The shares are not in Mr. D'Aulan's possession.

Nevertheless, Ms. D'Aulan asks that I "divest" Mr. D'Aulan of "legal title" to the Alastor shares he transferred to Turnal.[70] She also seeks an order requiring Alastor to "issue a new share certificate" in her name for the shares Mr. D'Aulan transferred to Turnal.[71] In the alternative, she asks that I seize the shares at issue.[72] Because Mr. D'Aulan does not hold the shares, though, this relief necessarily involves Turnal's interests.[73] There is a "substantial risk" under Rule 19(a)(1) "that the court cannot accord complete relief" without Turnal becoming a party to this action.[74]

---

[68] Pl.'s Answering Br. in Opp'n to Nominal Defs.' Mot. to Dismiss Pl.'s Am. Compl. (Dkt. 42) ("Pl.'s Answering Br.") 21.

[69] Compl. ¶¶ 70-72.

[70] *Id.* at 52-53; *see* Compl. Ex. S.

[71] Compl. 52-53.

[72] *Id.* ¶¶ 150-57; *see* 10 *Del. C.* § 366.

[73] *See* Tr. of Oral Arg. on Mot. to Dismiss (Dkt. 72) 24 (Ms. D'Aulan's counsel acknowledging that issuance of a new share certificate would require the cancelation of Turnal's certificate)

[74] Ct. Ch. R. 19(a)(1).

Rule 19(a)(2) is implicated for similar reasons. Turnal is a named party to the Transfer Order that Ms. D'Aulan asks this court to recognize and enforce—an order that concerns Turnal's property. Yet she insists that the action here can go forward against Mr. D'Aulan (one counterparty to the Transfer Order) but not Turnal (the other counterparty).[75] By bringing Turnal into the English Court proceeding, she cannot now erase its interests in the enforcement of the resulting Transfer Order. Proceeding in this court without Turnal would "impair or impede" its ability to protect its interests.[76] It would also risk "double, multiple, or otherwise inconsistent obligations" if Turnal were to later assert its rights to the Alastor shares.[77]

Ms. D'Aulan argues that Turnal had a chance to address the Transfer Order in the English Court.[78] But Turnal never appeared in that action. Mr. D'Aulan made

---

[75] If the Transfer Order had already divested Turnal of the shares and conveyed them to Ms. D'Aulan, it is unclear why she would need this court to "divest legal title" from Mr. D'Aulan and "vest title in [her]." Compl. 53.

[76] Ct. Ch. R. 19(a)(2)(i); *see Elster v. Am. Airlines, Inc.*, 106 A.2d 202, 204 (Del. Ch. 1954) (concluding that non-party beneficiaries of stock options were indispensable in an action involving invalidation of the options since the disposition of the case would "seriously affect" the optionees' rights though the options were allegedly void); *cf. Onescreen Inc. v. Hudgens*, 2010 WL 1223937, at *2 n.9 (Del. Ch. Mar. 30, 2010) ("In a suit to invalidate a transaction, the parties to that transaction are generally considered indispensable parties because a judgment entered in their absence may be unduly prejudicial and inadequate.").

[77] Ct. Ch. R. 19(a)(2)(ii); *see also Hodson v. Hodson Corp.*, 80 A.2d 180, 181 (Del. Ch. 1951) ("[I]t is the rule, long settled in this state, that the owner of shares of stock in a Delaware corporation is an indispensable party to an action to cancel such shares[.]").

[78] Pl.'s Answering Br. 23.

15

arguments about service and personal jurisdiction over Turnal, but he did not speak for Turnal or have parallel interests on the subject.

Turnal is therefore a necessary party under Rule 19(a). It must be joined to this action if feasible.

### 2. Joinder of Turnal is Not Feasible.

"Rule 19(a) limits nonparties who 'shall be joined as a party in the action' to those 'subject to service of process.'"[79] The party asserting a Rule 19 defense must demonstrate that the absent person is not subject to service of process.[80] In resolving the issue, the court will not rely on general assertions but an assessment of the facts.[81]

Turnal is a Uruguayan entity. Its sole apparent connection to Delaware is the Alastor shares Mr. D'Aulan transferred to it. None of the challenged events occurred in Delaware or have any relation to Delaware other than Alastor's status as a Delaware corporation. These facts indicate that Turnal cannot feasibly be joined. It is "well settled that ownership of stock in a Delaware corporation is, standing alone,

---

[79] *Germaninvestments*, 2020 WL 6870459, at *11 (quoting Ct. Ch. R. 19(a)).

[80] *Id.*

[81] *Id.* ("While the party asserting Rule 19 as a defense bears the burden of demonstrating that the absent party is not subject to service, the defense will be tested not on a plaintiff's general assertion that service can be effected but on a careful assessment of the 'facts which are before the Court.'" (quoting *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 350 A.2d 341, 345 (Del. 1975))).

insufficient to subject any individual to service of process, unless the action is relating directly to the legal existence of stock or its characteristics or attributes."[82]

Ms. D'Aulan argues that Turnal is subject to service of process because the "recognition and enforcement of the Transfer Order will affect the characteristics and attributes" of the transferred Alastor shares.[83] She cites to precedent observing that "in a limited number of situations, ownership of stock in a Delaware corporation may, by itself, be a sufficient minimum contact to satisfy the demands of due process."[84] But a suit seeking to "void a transfer of stock" does not directly relate to "the legal existence, rights, characteristics, or attributes of stock in Delaware corporation."[85]

Where, as here, an action concerns only "the transfer of stock, not its existence or characteristics," ownership of stock in a Delaware corporation is "insufficient to subject an individual to service of process."[86] Turnal has not consented to service

---

[82] *Id.* at *12 (citation omitted).

[83] Pl.'s Answering Br. 24.

[84] *Onescreen*, 2010 WL 1223937, at *5.

[85] *Id.* at *5-6.

[86] *Id.*; *see Germaninvestments*, 2020 WL 6870459, at *22.

17

of process or this court's personal jurisdiction over it.[87] Joinder is therefore unfeasible.

### 3. Equity and Good Conscience Require Dismissal.

Rule 19(b) requires the court to next "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[88] This analysis is guided by the four non-exclusive factors listed in Rule 19(b), which are "interdependent and must be considered in relation to each other" and the facts of the case.[89] The factors are:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.[90]

---

[87] Although Turnal is named as a defendant in the separate action pending before this court, it has not been served with the February 2023 complaint. *D'Aulan*, C.A. No. 2023-0256-LWW.

[88] Ct. Ch. R. 19(b).

[89] *Germaninvestments*, 2020 WL 6870459, at *12 (quoting *Marina View Condo. Ass'n of Unit Owners v. Rehoboth Marina Ventures, LLC*, 2018 WL 1172581, at *2 (Del. Ch. Mar. 6, 2018)); *see also Council of Civic Orgs. of Brandywine Hundred, Inc. v. New Castle Cty.*, 1993 WL 390543, at *7 (Del. Ch. Sept. 21, 1993) ("The weight to be given each factor in a Rule 19(b) analysis must be determined by the trial court in light of the controlling equity and good conscience test and in terms of the facts and circumstances of each particular case.").

[90] Ct. Ch. R. 19(b).

18

These factors suggest that the court cannot "in equity and good conscience" continue without Turnal.[91]

First, proceeding in Turnal's absence would create prejudice. This action directly implicates a foreign order to which Turnal was a party. The Transfer Order involves Turnal's property interests. Proceeding without Turnal would be prejudicial not only to it but also to the parties to this case since a judgment here would not bind Turnal.

Second, this prejudice cannot be lessened or avoided. Turnal is unlikely to intervene given that its only link to Delaware is the Alastor shares Mr. D'Aulan transferred to it. Its "ostensible ability to intervene" is inadequate given that it is neither "located within the United States nor closely tied to the state of Delaware."[92] Further, the purported agreement between Turnal and Mr. D'Aulan provides for alternative dispute resolution under Argentinian arbitral rules concerning the transfer.[93]

---

[91] *Id.*

[92] *Germaninvestments*, 2020 WL 6870459, at *13; *see also Mt. West Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, 2019 WL 2536104, at *27 (Del. Ch. June 20, 2019); *see also Brandywine Hundred*, 1993 WL 390543, at *5 (considering "whether intervention would impose undue hardship on the absentee").

[93] The purported transfer agreement contains a dispute resolution provision designating the Arbitration Regulations of the Commercial Mediation and Arbitration Center of the Argentine Chamber of Commerce of the Argentine Republic. Compl. Ex. S ¶ 9; *see also* Compl. Ex. T ¶ 9.

Third, a judgment rendered in Turnal's absence would be inadequate. Ms. D'Aulan seeks recognition of the English Court's determination that the share transfer from Mr. D'Aulan to Turnal is void. She requests the issuance of a new stock certificate to her, which requires the cancelation of Turnal's certificate. Judgment in her favor could invite future litigation from Turnal.[94]

Fourth, Ms. D'Aulan has access to alternative forums. She could pursue contempt proceedings or seek relief from the English Court that entered the Transfer Order and opted to exercise jurisdiction over Turnal. She could seek relief in Uruguay where Turnal is located. Or she could potentially proceed in Argentina.

Taken together, these factors support dismissal for non-joinder. Ms. D'Aulan seeks remedies that substantially affect Turnal's rights. Judgment here would deprive Turnal of an opportunity to be heard by this court.

*        *        *

In the alternative, Ms. D'Aulan asks for leave to amend the Complaint to add Turnal as a defendant.[95] Rule 15(a) provides that leave to amend pleadings "shall be freely given."[96] But I have found that Turnal cannot feasibly be joined and is

---

[94] *See Germaninvestments*, 2020 WL 6870459, at *13.

[95] Pl.'s Answering Br. 67.

[96] Ct. Ch. R. 15(a).

outside this court's process. "[O]ur law is settled that the court should deny leave to amend when the amendment is futile."[97]

Ms. D'Aulan's claims are therefore dismissed without prejudice under Rule 12(b)(7) insofar as they seek recognition or enforcement of the *Ex Tempore* Judgment or Transfer Order.[98]

## B.    Rule 12(b)(6) Arguments on the Remaining Issues

The nominal defendants acknowledge that their Rule 19 arguments only involve the *Ex Tempore* Judgment and Transfer Order. There are four other English Court decisions at issue: the Rose Order, Financial Order, Final Opinion, and Final Order (together, the "Non-Transfer Judgments"). The Non-Transfer Judgments address the mandated sale of Alastor and division of the sale proceeds between Mr. D'Aulan and Ms. D'Aulan. They were issued in 2021 before Mr. D'Aulan transferred his Alastor shares to Turnal.

Ms. D'Aulan asks that I recognize the Non-Transfer Judgments on principles of international comity. She does not seek recognition under the Delaware Uniform Foreign-Country Money Judgments Recognition Act, which does not support

---

[97] *Germaninvestments*, 2020 WL 6870459, at *12 (*citing Clark v. State Farm Mut. Auto Ins. Co.*, 131 A.3d 806, 811 (Del. 2016)).

[98] *See* Ct. Ch. R. 41(b) (providing that dismissals for "failure to join a party under Rule 19" are to be without prejudice); *see* Wright, *supra* note 62 ("A dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice to the institution of a later action.").

recognition of judgments resulting from foreign divorce proceedings.[99]  The nominal

defendants argue that the portion of this action unaffected by Rule 19 must be

dismissed because Ms. D'Aulan cannot state a viable claim for enforcement or

recognition of the Non-Transfer Judgments.[100]

Dismissal under Rule 12(b)(6) is appropriate for at least two reasons.[101]  First,

resolving the ownership of the transferred Alastor shares is a predicate issue.  The

Non-Transfer Judgments concern profits from the sale of Alastor that Mr. D'Aulan

---

[99] 10 *Del. C.* § 4802(b)(3).

[100] Ct. Ch. R. 12(b)(6); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (detailing the "reasonable conceivability" standard to be applied by the court); *see also In re China Agritech, Inc. S'holder Deriv. Litig.*, 2012 WL 2181514, at *23-23 (Del. Ch. May 21, 2013) (explaining that the operative test is "one of 'reasonable conceivability,'" which asks "whether there is a 'possibility' of recovery" (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536-37 (Del. 2011))).

[101] Had I not held that dismissal concerning the Transfer Order is warranted under Rule 19, I would proceed to consider whether principles of international comity support recognition and enforcement of the English Judgments.  *See de la Mata v. American Life Ins. Co.*, 771 F. Supp. 1375, 1381 (D. Del. 1991) (listing six factors considered in recognizing foreign judgments in Delaware under principles of comity).  That analysis is not straightforward. For example, there are serious questions surrounding whether the English Court had personal jurisdiction over Turnal.  *Id.* (discussing personal jurisdiction as a factor); Restatement (Fourth) of the Foreign Relations Law of the United States § 403 (2014) (discussing mandatory grounds for non-recognition as including the foreign court's lack of jurisdiction).  It does not appear that Turnal had any connection to the United Kingdom. The English Court was aware that Turnal disputed personal jurisdiction over it.  *See* Compl. Ex. N at 12, 16.  But the English Court said that jurisdiction was a matter for this court in Delaware or a court in Uruguay "to deal with."  Compl. Ex. Q ¶ 15.  Given the unresolved threshold issues, however, I need not definitively resolve the merits of the plaintiff's claims in this decision.

would owe to Ms. D'Aulan.[102]  If Alastor were sold as the English Court ordered, Turnal's purported 50% ownership of Alastor could prove problematic as Mr. D'Aulan would not receive related proceeds from the sale.

Second, the Non-Transfer Judgments appear inconsistent with Delaware law, which governs the internal affairs of Alastor.[103]  They mandate a sale price for Alastor and purport to grant Ms. D'Aulan—a 50% stockholder of Alastor—complete authority over the sale.[104]  But Alastor is a Delaware corporation that is overseen by a board of directors.[105]  McCann—Alastor's sole director—was not a party to the English divorce proceedings.  The Non-Transfer Judgments would strip him of discretion over whether, by which means, and for how much Alastor should be sold.

---

[102] *See supra* Sec. I.B. (discussing the effects of the Non-Transfer Judgments on the sale of Alastor and Mr. D'Aulan's financial obligations to the plaintiff).

[103] *See In re Marriage of Pascavage*, 1994 WL 838136 (Del. Fam. Ct. Aug. 15, 1994) (refusing to recognize a foreign divorce under the doctrine of international comity and stating that "[a] decree of divorce will not be recognized by comity where . . . the divorce offends the public policy of the state in which recognition is sought" (quoting *Litvaitis v. Litvaitis*, 295 A.2d 519, 522 (Conn. 1972))); Rest. of the Foreign Relations Law of the U.S. § 484 (listing discretionary grounds for nonrecognition of a foreign judgment as including the public policy of the state from which recognition is sought).

[104] Compl. Ex. F ¶ 20; Compl. Ex. D ¶ 21; Compl. ¶ 50.

[105] *See* 8 *Del. C.* § 141(a); Def.'s Opening Br. Ex. A (Alastor certificate of incorporation). The court may take judicial notice of Alastor's certificate of incorporation under Delaware Rule of Evidence 201(b).  *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 501 n.40 (Del. Ch. 2000) (taking judicial notice of a corporation's certificate of incorporation).

For these reasons, Ms. D'Aulan has not stated a claim for recognition or enforcement of the Non-Transfer Judgments upon which relief can be granted. At the very least, the validity of the transfer and ownership of the Alastor shares transferred to Turnal must be resolved before I could properly recognize and enforce the English Judgments. As a matter of discretion, Ms. D'Aulan's claims are dismissed without prejudice so that she may press them if needed at the appropriate time.[106]

## III. CONCLUSION

The nominal defendants' motion to dismiss is granted under Rule 12(b)(7) insofar as it concerns the *Ex Tempore* Judgment and Transfer Order. It is granted under Rule 12(b)(6) insofar as it concerns the Non-Transfer Judgments. The Complaint is dismissed without prejudice.

---

[106] Because I am dismissing the Complaint entirely, I need not resolve whether McCann should separately be dismissed.